FREDERICK J. SEYMOUR v. THE DETROIT COPPER AND BRASS
ROLLING MILLS.

56  117
82  350
56  117
113  463
56  117
f151  ¹218

*Contract with corporation—Rescission—Laches—Waiver.*

1. The directors of a company agreed with S that he (1) should be made a director ; (2) should be elected ·superintendent; (3) should have a certain amount of capital stock and time to pay for it; and (4) should be paid a salary. *Held* a severable contract; that the *first* clause was void where stockholders and directors were not identical; that though the last two causes were fulfilled, yet if the *second* was not, S could demand a rescission so far as the contract was not performed and could tender back the stock and maintain an action to recover the money he had paid for it.

2. Laches is hardly imputable where plaintiff's claim has been under consideration for adjustment most of the time before suit.

3. An error in a charge is immaterial where it cannot affect the result.

4. Waiver of a condition is not to be assumed from the fact that the party entitled to its fulfilment performs on his own part and waits at the request of the other party for fulfilment by the latter.

5. It is evidence of rescission where a party to a contract within a reasonable time after refusing performance demands a settlement and restoration to the former status, and the parties negotiate accordingly.

Error to Wayne.   (Chambers, J.)   Jan. 9.—Jan. 28.

ASSUMPSIT.   Defendant brings error.   Affirmed.

*Chas. M. Swift* for appellant.   A contract cannot be rescinded unless all parties can be put in statu quo ; where defendant has partially performed, plaintiff is not permitted to rescind, but is left to his action for damages for the breach : 2 Pars. Cont. 679 ; *Hunt v. Silk*, 5 East 249 ; *Beed v. Blandford* 2 Y. & J. 278.

*Don M. Dickinson* for appellee.

SHERWOOD, J.   It appears from the record in this case that the plaintiff is an experienced practical mechanic, and is especially skilled in the erection of mills and superintending their construction.   Prior to April, 1831, he had been em-

ployed by the defendant in superintending the construction of
its works, and the defendant was then in need of a superin-
tendent for its manufacturing department.    The plaintiff re-
sided in Waterbury, Connecticut.    On the 5th day of April,
1881, the defendant solicited a proposition from the plaintiff
to enter its service as superintendent of the works of the
company at Detroit.    The negotiations were carried on, on
the part of the defendant, through its president, R. W. Gill-
ett, with the plaintiff.    On the 6th day of April, 1881, the
plaintiff made the following proposition to the company to
enter its service :  (1)The plaintiff to be elected a member of
the defendant's board of directors ; (2) to be elected super-
intendent, and have entire charge of the manufacturing de-
partment ; (3) to have five or ten thousand dollars of its capi-
tal stock, and time for payment therefor ; (4) to be paid a
salary at the rate of three thousand dollars per year.    The
proposition was submitted in writing and went before the
board of directors, and was finally accepted by the company
on the 27th day of April, 1881, by telegram, the plaintiff
being in Montana at that time.    Plaintiff came to Detroit as
early as convenient, and entered the service of the company,
under the contract thus made, on the 1st day of July, 1881,
and remained until the 10th day of July, 1882 .

The annual meeting of the stockholders, for the election
of officers, was held April 14th in each year, and on the
plaintiff's arrival in Detroit, the president informed him that
the company would transfer to him $5000 worth of its stock,
and at the following April election make him a director, and
wished him to go right along with the company's business
as he would have done if he had been made a director.    And
the plaintiff complied with the request, expecting, however,
to be elected superintendent.    The stock was transferred to
the plaintiff about two months after he commenced business
for the company, and dated back to July 1st, and the plaint-
iff gave the company his note for $5000 to pay therefor, and
allowed the certificates to remain with the company as col-
lateral to the note.    The plaintiff, in fact, never had the cer-
tificates in his possession, but left them under the exclusive

control of the defendant. The note was made payable one year after date, and the plaintiff paid, in March, 1882, $1000 and interest thereon. The plaintiff was never made a directtor of the company, nor elected superintendent. The defendant paid him his salary, as agreed upon, up to the time he left, and did not wish him to leave ; but failing to obtain the positions in the company promised to him, he left its service in July, 1882, as above stated. The plaintiff claimed that the defendant failed to comply with the terms of the agreement under which he was induced to take the stock, in part payment for which he had let the defendant have the thousand dollars, and that he had the right to surrender the stock and receive back the money ; and after some correspondence with the president of the company in regard to his claim, gave formal notice of rescission of the contract, tendered a transfer of the stock to the company, and demanded his note and the thousand dollars paid thereon. Such is the statement contained in the record. The company failed to comply with the demand, and the plaintiff brings this suit to recover the thousand dollars paid upon the note. The case was tried in the Wayne circuit court before a jury, and the plaintiff recovered. The defendant brings error.

The plaintiff and Mr. Gillett, the president of the company, were the only witnesses sworn in the case. Their testimony, when taken as a whole, I do not think, on the points essential to a proper disposition of the case, materially conflicts. I shall not attempt a detail of the evidence. They both agree that the plaintiff was employed by the company, and that he entered its service upon specified terms; that the service was rendered, and payment in full therefor made in accordance with the contract; that the plaintiff was to have been made director, and that his position was to be that of superintendent of the manufacturing department of the company's business; that the plaintiff was to have a certain amount of the company's capital stock; that he was never elected a member of the board of directors; and that the board of directors never took any action after the contract was made with the plaintiff, by which he was elected or appointed

superintendent of the company's manufacturing business; that after the plaintiff entered the service of the company $5000 worth of the company's stock was transferred to the plaintiff, and that he gave his note therefor, and paid thereon the thousand dollars sued for. And, while I think it clearly appears from the evidence of the plaintiff that the inducement for him to enter the service of the defendant was that he should occupy the position of superintendent of the manu- facturing department of the company's works and business at Detroit, and have such control of the business and the men in the employ of the company as that position would give him, and that the sole consideration for the purchase of two hundred shares of stock, and the note he gave therefor, and the money he paid thereon, was the contract of the defend- ant that he should be made a member of the board of di- rectors, and by it elected superintendent, or have in some manner, by its action to be properly taken, that position, with the control and influence usually appertaining thereto, secured to him, I do not find in the defendant's evidence these facts controverted.

It certainly is most probable that the company would desire its superintendent to occupy the most favorable position possi- ble to promote the prosperity of its business and secure the greatest efficiency in its conduct and management, and this could not be done unless the necessary power was conferred upon him by the board of directors, and that fact made known to the servants and other employees of the company. This power was never conferred upon the plaintiff by the board of directors, neither was any action ever taken after the contract was made by the company with him for his services by the board of directors, but, on the contrary, he claims, and I think the testimony tends strongly to show, that he was never permitted to occupy the position of superintendent of the company's manufacturing business at Detroit and exercise the control usually appertaining to that position; that his position, and the business it was his duty to perform, were greatly and at times seriously interfered with by the directors and president of the company, thereby making his situation

a humiliating one, and rendering his position nearer that of a foreman in the defendant's shops than that of superintendent of the company's manufacturing business. There seems to be no question that the plaintiff worked well for the company and its interests, and that his services were entirely acceptable, and that the defendant paid the stipulated sum therefor. This branch of the contract between the parties, therefore, needs no further consideration. It was fully executed before the suit was brought.

It is claimed by counsel for defendant that, the contract having been partly executed by the parties, the plaintiff could not rescind as to that part relating to the purchase of the stock. I do not understand that in all cases the doctrine contended for applies, and I think this case falls within the excepted class. It is true, there can be no rescission so far as the contract relates to the services performed. In this case the agreement consists of two contracts, severable and independent of each other, and have so been treated by the parties, they having fully executed the first, which relates entirely to the services and pay of plaintiff therefor. And in the view I take of the second, there has been a clear failure on the part of the defendant to perform its agreement, which was the real consideration and inducement upon which the plaintiff took the stock, gave his note, and paid his money, viz., that he was to be elected director of the company, and superintendent of the manufacturing department. That he gave his note and paid his money, and took a transfer of the stock, before the performance of the agreement by defendant, which constituted the consideration for his so doing, is of no consequence so long as the postponement was asked for by the company. Performance by the defendant was properly a condition precedent to what the plaintiff did, and was to constitute the entire consideration therefor, and, the defendant having wholly failed to perform, the plaintiff's right to tender a transfer of the stock to the company and rescind the contract, I think, was complete and perfect. By the rescission made, the parties were reinstated in their original situation, so far as the contract related to the purchase of the

stock. 2 Story Cont. § 1337; 2 Pars. Cont. 679. The defendant's contract was executory, and it has lost nothing by the rescission.

It is claimed by defendant's counsel that upon the testimony of Mr. Gillett the plaintiff waived his election as director of the company, but this was of no account, as we shall presently see. The undisputed testimony shows no laches on the part of plaintiff. It appears from the correspondence of the parties that the claim made by the plaintiff was more or less under consideration for adjustment by the defendant most of the time before suit and before formal rescission was made. I think it was made within a reasonable time.

At the close of the testimony the court charged the jury as follows:

"If you find that Mr. Seymour purchased the two hundred shares of stock, and paid the $1000, on the agreement that he should be elected superintendent and director, and the company failed in both particulars, or in one, the plaintiff is entitled to recover back the $1000 and interest from the date of payment. It makes no difference whether such appointments were important or not; if they were contracted for as the consideration for the taking of the stock, Mr. Seymour was entitled to have them or to have his money. If you believe that Mr. Seymour's stock was taken in pursuance of an agreement that he should be made a director and superintendent, and find that he was not made a director, then the plaintiff is entitled to recover $1000 and interest. There was no waiver of his rights under the contract by Mr. Seymour, unless it was expressly understood and agreed by him, for a consideration, that he would keep his stock and pay for it without his appointment as director and superintendent; the mere agreeing or consenting to wait for performance is no waiver. If the jury believe that when Mr. Seymour left, or within a reasonable time thereafter, he insisted upon having the stock matter settled and on having his money back, and to retransfer his stock to them, and if that matter was negotiated between the parties, that is evidence tending to show a rescission."

The above charge was correct, with a single exception. If the company or its board of directors had, in pursuance of

the agreement with the plaintiff, elected or appointed him superintendent of the manufacturing department of its business at Detroit, the plaintiff could not have recovered; he could not have insisted upon that part of the agreement relating to electing him director. Such an agreement is invalid upon the facts appearing upon this record. What might be the effect in a case where the directors were all the stockholders, it is unnecessary now to consider. The testimony is all given in the record and there is none showing, or tending to show, that the plaintiff was ever elected or appointed superintendent of the manufacturing department of the defendant's business by its stockholders or directors, as was required by the contract. Such being the case, the exceptionable portion of the charge was of no importance. The verdict of the jury was only such as might have been properly directed by the court. It is unnecessary to consider the case further.

The judgment at the circuit must be affirmed.

The other Justices concurred.

Motion for rehearing.     Denied April 29.

*Charles M. Swift* for the motion.

*Don M. Dickinson* against.

SHERWOOD, J.   The opinion in this case was filed at the last January term of this Court.   *Ante,* p. 117.   The judgment at the circuit was affirmed.   Motion is now made for a rehearing upon two grounds: (1st) Because the facts were misconceived and misstated in the opinion of the court; (2d) Because the law as stated by the court, applied to the facts as they correctly appear, will render a reversal necessary. We have carefully reviewed the record and briefs of defendant's counsel, used upon the argument, and filed upon this motion for rehearing, and find that we neither mistook the facts nor misapplied the law in the opinion given or judgment rendered.   The proposition made to the company by plaintiff, and upon which he consented to enter its service,

and be permitted to have the stock, was in writing, mentioned in the record as Exhibit A, and is as follows:

"APRIL 6, 1881.

Copy of proposition to the Detroit Copper & Brass Rolling Mills, to engage in their employ.

(1st) To be elected a member of the board of directors. (2d) To be elected superintendent, and have entire charge of manufacturing department. (3d) To have five or ten thousand dollars' capital stock, with time on its payment. (4th) To be paid as salary at the rate of three thousand dollars per year."

In pursuance of the action of the directors, properly taken, the proposition was accepted by the company, through its president, Mr. Gillett, by telegram as follows:

"WESTERN UNION TELEGRAPH COMPANY, ETC.

Dated DETROIT, Apr. 27, 1881.

Received at          29 April.

*To Fred. J. Seymour, care Col. J. A. Hall:* We accept your offer on terms proposed by you, and want you as soon as possible. When may we expect you? Answer.

R. W. GILLETT, President."

Mr. Gillett says, in his testimony, he sent this telegram to the plaintiff; and the plaintiff says this was the only contract he ever made with the company. Mr. Gillett further states that the plaintiff made a verbal proposition to him in March previous, which the company refused to accept; that this was the plaintiff's only proposition to him; and that he never saw the paper of which Exhibit A is a copy. This does not contradict the statement, or the fact that a written proposition was submitted to the directors, and accepted by the telegram he sent for the company. Mr. Gillett says the plaintiff was never elected or in any way appointed by the board of directors to the office or position of superintendent of the company's manufacturing department, and there is no evidence contradicting him upon this subject. Gillett's *employing* him for the position is one thing; and the board of directors' *electing or appointing* him to it is quite another. One commands proper compensation for the service rendered; the other *position, dignity, influence and respect* among all

the employees and correspondents of the company. It was the latter which was promised the plaintiff under the contract; and it is admitted that he never received an election or appointment to the position *by the board of directors.*

It was within the corporate powers of the company to secure to the plaintiff, by election or appointment, the position promised under the contract he made with the defendant. It was unquestioned that the plaintiff's services were worth the $3000 paid for them by the defendant, and that the latter received $1000 under the contract of plaintiff for the stock, and that the stock was held as collateral security for payment of the balance ; that the stock had never been out of the possession of the defendant. It was further, also, unquestioned that the plaintiff, at the end of the year, left the service of the defendant, and made known to its officers the fact that he wanted the money he had paid towards the stock, and was ready to retransfer the same to the defendant; that the company held the matter under consideration for a long time, and that he finally gave formal notice of rescission,—offered to retransfer to defendant the stock, and demanded the money paid. Under these facts, uncontradicted, and a proper application of the law, we can see no reason why the court could not have directed a verdict for the plaintiff. It is claimed, however, the law was wrongly applied ; that the contract of plaintiff for the stock could not be rescinded. Due attention was given to this subject when the case was first before us, and we see no occasion to change our views given in the opinion filed.

We discover no new points, either upon the law or the facts, suggested in the brief of counsel for defendant, and the review of the case discloses no necessity for a rehearing, and the motion must therefore be denied.

CHAMPLIN, J. concurred.

COOLEY, C. J. and CAMPBELL, J. concurred in the result.