NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  06a0095n.06
Filed:  February 7, 2006

No. 04-2254

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BUCKEYE ELECTRIC CO.,                        )
                                             )
        Plaintiff-Appellee,                  )
                                             )
v.                                           )    ON  APPEAL  FROM  THE  UNITED
                                             )    STATES  DISTRICT  COURT  FOR  THE
CHRIS ERICKSON,                              )    EASTERN DISTRICT OF MICHIGAN
                                             )
        Defendant-Appellant.                 )

Before:  GUY, SUTTON and McKEAGUE, Circuit Judges

        SUTTON, Circuit Judge.  Chris Erickson appeals the district court's grant of summary

judgment to Buckeye Electric Company in this contract dispute.  Because the record supports a

single conclusion—that Erickson's company, Amphion Inc., breached a settlement agreement, which

triggered his obligations as a guarantor—we affirm the judgment of the district court.

I.

        In the late 1990s, Amphion, an electrical-contracting company wholly owned by Erickson,

failed to pay Buckeye Electric $308,655.08 for services performed.  Seeking to collect the debt,

Buckeye filed a complaint against Amphion, which the parties settled in October 2000.

Under the settlement agreement, Buckeye agreed to recoup its debt by securing contracts, hiring Amphion as a subcontractor and receiving a portion of Amphion's share of each contract. Amphion promised to provide Buckeye with its 1998 and 1999 tax returns as "a condition precedent" to the performance of Buckeye's settlement obligations. JA 54 ("Amphion shall provide Buckeye with copies of its 1998 and 1999 tax returns. The purpose of this provision is to provide proof that, in Buckeye's sole discretion, Amphion is financially able to perform the contracts envisioned by this Agreement. This requirement is a condition precedent to Buckeye's Obligations herein."). Once Buckeye received the tax returns, the agreement required it to "use its best efforts to procure contracts" for which Buckeye could hire Amphion as a subcontractor. JA 53. Amphion, in turn, agreed to dedicate 15% of its share of these contracts toward satisfying its debt to Buckeye.

The agreement contained several provisions dealing with the possibility that Amphion ultimately would not satisfy the debt owed to Buckeye. The settlement required Amphion to "execute an Agreed Judgment Entry" against itself and "a Waiver of Service," and required Erickson to execute a "Personal Guaranty and Note in favor of Buckeye." JA 54. The agreement entitled Buckeye to file the agreed judgment if, by January 1, 2001, Amphion did not have "contracts in force from Buckeye that equal[led] or exceed[ed] twenty (20%) percent of the balance due." JA 55.

In accordance with the agreement, a Buckeye representative and Erickson, in his capacity as president of Amphion, signed the agreed-judgment entry, granting Buckeye "a Judgment against [Amphion] in the amount of $349,955.00, which amount includes interest and attorney fees through October 19, 2000, plus its costs." JA 57. Erickson, in his personal capacity, also signed a "Personal

Guaranty and Note," "promis[ing] to pay to Buckeye Electric Co.[] the sum of $349,955.00, . . . payable under the terms and conditions of the Agreement between Amphion, Inc., and Buckeye Electric Co., dated October 19, 2000." JA 58.

On January 31, 2001, Buckeye sent Erickson a letter "review[ing] the developments since entering into the Agreement on October 19, 2000." JA 251. "The schedule for procurement of contracts," the letter said, "has obviously not been met," which constituted an "event of default" allowing "Buckeye to cancel the Agreement and proceed with collection." *Id*. Buckeye noted, however, that it was "not exercising this option at this time," but advised Erickson that it was in his "best interest to make some type of payments in order to show a good faith effort to reduce the debt." *Id*. The letter concluded: "I would also like to receive the tax returns which were promised but never delivered." *Id*. Erickson never forwarded the tax returns to Buckeye and never made a payment on the debt. On February 14, 2001, Buckeye notified Erickson that "Amphion, Inc., and you individually, are in default of the Agreement." JA 252.

On December 20, 2001, in a separate action, Buckeye filed the agreed judgment against Amphion. And on January 11, 2002, Buckeye filed this diversity action against Erickson, alleging that Amphion had breached the settlement agreement, making Erickson liable under the terms of the personal guaranty. On September 9, 2004, the district court granted Buckeye's motion for summary judgment against Erickson.

II.

The granting of a summary-judgment motion receives de novo review, *see Wojcik v. City of Romulus*, 257 F.3d 600, 608 (6th Cir. 2001), which requires us to determine whether there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(c). The parties agree that Michigan law governs this diversity action.

In our view, the district court properly granted Buckeye's summary-judgment motion. Under the settlement agreement, Buckeye was required only to use "its best efforts to procure contracts which will utilize Amphion's expertise," JA 53, after Amphion had provided "Buckeye with copies of its 1998 and 1999 tax returns," JA 54. And if Amphion did not "have contracts in force from Buckeye that equal[led] or exceed[ed] twenty (20%) percent of the balance due" by January 1, 2001, JA 55, Buckeye could exercise the "right to re-file the suit and file the Waiver of Service and Judgment Entry, and proceed with collection," JA 54. Amphion never produced the tax returns; Buckeye never secured any contracts; and Amphion consequently had none of the necessary contracts in force on January 1, 2001. This chain of events entitled Buckeye to refile the action against Amphion and triggered Erickson's obligations as the personal guarantor of Amphion. *See* JA 58 ("[Erickson] promises to pay Buckeye Electric Co., the sum of $349,955.00, plus interest and attorney fees from October 19, 2000, payable under the terms and conditions of the Agreement between Amphion, Inc., and Buckeye Electric Co., dated October 19, 2000.").

Attempting to fend off this conclusion, Erickson argues that Buckeye's conduct—namely, seeking contracts before obtaining the tax returns—"waive[d] the condition precedent of the production of tax returns by Amphion." Erickson Br. at 12. We disagree.

Under Michigan law, a waiver "is a voluntary and intentional abandonment of a known right. . . . [W]hen a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied," and modification or waiver may be proved. *Quality Prods. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) (citations omitted). A "[w]aiver of a condition," however, "is not to be assumed from the fact that the party entitled to its fulfillment performs on his or her own part and waits at the request of the other party for fulfillment by the latter." 5A Mich. Civ. Jur. *Contracts* § 189 (2005); *see also Seymour v. Detroit Copper & Brass Rolling Mills*, 22 N.W. 317, 319 (Mich. 1885) ("That [the plaintiff] gave his note and paid his money, . . . before the performance of the agreement by [the] defendant, which constituted the consideration for [the plaintiff] so doing, is of no consequence so long as the postponement was asked for by [the defendant]. Performance by the defendant was properly a condition precedent to what the plaintiff did.").

Erickson has not satisfied the requirements for showing that Buckeye waived this condition precedent. Buckeye not only asked for the tax returns in the settlement agreement but also asked for them again by letter in January 2001. One does not waive a condition by insisting on its performance, which is precisely what Buckeye did through its January 2001 letter. That Buckeye

solicited contracts before obtaining the tax returns does not alter this conclusion. The company is in the business of soliciting such contracts and could not be expected to put all solicitations on hold while it waited for Amphion to come through with its obligation. This continuation of Buckeye's customary business does not supply the necessary clear and convincing evidence needed to show that Buckeye had waived the tax-return condition precedent—particularly in view of *Erickson's* statement to Buckeye that he "did not want [the tax returns'] unavailability to hold up the requirement of best efforts." JA 337. In the end, Buckeye's initiation (at Erickson's request) of contract solicitations, coupled with Buckeye's consistent requests for the returns, is not "conduct that would warrant [ ] an inference" of Buckeye's "actual intention to relinquish" the right to the tax returns as a condition precedent. *O'Sullivan v. Duro-Last, Inc.*, Nos. 99-2190, 99-2373, 00-1521, 2001 WL 345598, at *6 (6th Cir. Mar. 28, 2001) (construing Michigan law); *see also H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 184 (Mich. Ct. App. 1999) (holding that "plaintiff's conduct did not demonstrate an actual intention to relinquish its right" where the evidence showed that he "immediately and consistently made objections . . . and that he formalized his objections in letters") (internal quotation marks omitted); *Guardian Alarm Co. of Mich. v. May*, No. 00-1489, 2001 WL 1587300, at *4 (6th Cir. Dec. 11, 2001) (construing Michigan law and holding that plaintiff failed to demonstrate that defendant "voluntarily and intentionally waived its right" where defendant "actively asserted its rights under the Contract").

Erickson also claims that Buckeye waived the condition precedent when, "[a]t the time of the drafting," JA 336, Buckeye's attorney "stated to me that the absence of the returns would not

interfere with [Buckeye's] attempts" to secure joint projects, JA 337. Even assuming for summary-judgment purposes that Buckeye's attorney made this statement, it would not prove waiver. Under Michigan's parol-evidence rule, the terms "set forth in a writing intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Mich. Comp. Laws § 440.2202; *see also Edoff v. Hecht*, 260 N.W. 93, 95 (Mich. 1935) ("It is elementary that the terms of a written contract, complete upon its face and not ambiguous in its terms, may not be modified by verbal statements contemporaneous with its execution.") (internal quotation marks omitted). Because the alleged statement, as Erickson acknowledges, was made "[a]t the time of the drafting," JA 336, it may not be used to modify the contract.

Erickson, lastly, argues that the agreed judgment is not admissible as prima facie evidence of his liability as a guarantor. Not true. Under Michigan law, "a judgment against the principal . . . is admissible as [p]rima facie evidence against the surety . . . , although the surety was not a party to the former action and had no notice thereof." *P.R. Post Corp. v. Md. Cas. Co.*, 271 N.W.2d 521, 525 (Mich. 1978). And that is so even if the principal "did not contest the [judgment] or because he consented thereto." *Sauer v. Detroit Fid. & Sur. Co.*, 213 N.W. 98, 99 (Mich. 1927). In this case, Amphion consented to the judgment, making that judgment admissible as prima facie evidence of Erickson's guarantor liability. And, as required by Michigan law, Erickson had an opportunity "to come forward with evidence to rebut or contradict [his] liability" for the underlying judgment against Amphion. *P.R. Post*, 271 N.W.2d at 525. This he was unable to do.

III.

For these reasons, we affirm.