### Rachel M. Clark v. Eli Stilson and others; and Eli Stilson and another v. Rachel M. Clark.

*Contract: Construction: Mortgage: Agreement to release in part.*  A person holding a mortgage covering two parcels of land having contracted with his mortgagor that as soon as he should receive deeds of the parcels covered by his mortgage he would convey to the mortgagor's wife one of said parcels, the mortgagor to retain possession of the other parcel until such time as the mortgagee sells the same, and to pay the mortgagee interest at the rate of ten per cent. on an amount equal to the face of the mortgage, from the time of the conveyance to his wife of the one parcel until the sale by the mortgagee of the other, it is held to be a fair inference from this agreement, that the parties contracted in contemplation that a foreclosure should be had, and that in consideration of the change made in the form of security, the mortgagee was to release from the lien of the mortgage the portion of the land promised to be conveyed to the mortgagor's wife.

*Foreclosures: Sale in parcels: Right to redeem: Waiver.*  The requirement that a foreclosure sale shall be made in parcels is in the interest of parties entitled to redeem, and to protect their right to redeem each parcel separately; but where a party has in advance for a valuable consideration agreed to waive his right to redeem, he cannot object that .the sale was not made in parcels; and this objection cannot be taken by the mortgagee to his own proceedings, where no one else is in position to make it.

*Mortgages: Contract: Amicable arrangement: Defective foreclosure: Costs of new foreclosure.*  A mortgagee having entered into such a contract with his mortgagor, if after a defective foreclosure he should deem it important for any purpose of his own to proceed to a new foreclosure for the correction of any error in his own proceedings, he could neither legally nor equitably charge his mortgagor with the expense thereof.

*Vendor's lien: Judgment: Amount: Execution sale: Release.*  Where a person claiming to have a vendor's lien upon lands has mingled his claim for purchase money with a claim for the price of personal property, in a single judgment, in such manner as to render it impossible to determine how much of the judgment represents the price of the land and

how much the value of personal property, and under this judgment proceeded to execution levy and sale of the premises in question, his lien as vendor for the unpaid purchase money is lost.

*Vendor's lien: Equitable mortgage: Execution sale.* A vendor's lien is in the nature of an equitable mortgage; and under the statute (*Comp. L. 1871, § 4667*) the equity of redemption cannot be sold on execution for the satisfaction of the mortgage debt; and an execution sale of the premises upon a judgment for the purchase price would seem to negative the claim of lien.

*Execution sale: Purchaser's title.* An execution purchaser can obtain no better right than the judgment debtor had at the time of the levy.

*Heard April 13 and 18. Decided June 6.*

Appeal in Chancery from Kalamazoo Circuit.

*Russell & Wadleigh* and *G. M. Buck,* for complainant.

*Edwards & Sherwood,* for defendants Stilson.

*Arthur Brown,* for defendant Sebring.

COOLEY, CH. J:

This is a suit by the administrator of Amasa L. Clark to foreclose a mortgage given to him by the defendant Eli Stilson and his wife. The defendant Sebring is brought in as claiming an interest in one of the two parcels of land described in the mortgage, as subsequent incumbrancer, pur-chaser or otherwise.

The defendants Stilson and Sebring set up separate de-fenses, and the latter has filed a cross-bill. The defense of each may best be considered separately.

The mortgage was for the sum of two thousand dollars, and bore date February 8, 1869. On the 2d day of March, 1872, Stilson claims to have made an agreement with Clark, by which the latter was to proceed to foreclose his mortgage and obtain title under it, and then to take one of the two parcels of land in satisfaction, conveying the other to Mrs. Stilson. He, however, demanded two hundred and fifty dollars as a bonus for doing this, which Stilson avers he paid; and he was also to leave the land he should take in the possession of Stilson, who was to pay what in the agree-ment was called interest, and which we understand was in fact equal to ten per centum annually on the amount then

owing from Stilson to Clark.    As evidence of this agreement, Stilson produced the following instrument:

"Article of agreement this 2d day of March, 1872, between Amasa L. Clark of the city of Battle Creek, Calhoun county, Mich., of the first part, and Eli Stilson of Ross, Kalamazoo county, Mich., of the second part.    The said party of the first part does hereby agree that as soon as he shall receive deeds of the lots of land in Ross, Kalamazoo county, Mich., described as follows: Being the west half of the northeast quarter of section number twenty-four, in township number one south of range number nine west, containing eighty acres, and the one described as the north half of the southeast quarter of section thirteen, in town one south of range nine west, containing eighty acres, that he will convey to Emeline Stilson, by good warranty conveyance, the lot described as follows: The west half of the northeast quarter of section number twenty-four, in township number one south of range number nine west, containing eighty acres.    The said party of the second part agrees to pay to the party of the first part interest on twenty-six hundred dollars at ten per cent. per annum from the time the deed is conveyed to Emeline Stilson until such time as he shall sell the lot described as follows: The north half of the southeast quarter of section thirteen in town one south of range nine west, containing eighty acres; it being mutually understood by and between said parties that the said party of the second part is to have possession of the lot last described, until such time as said party of the first part shall sell it.

"It is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties.    In witness whereof the said parties have hereunto set their hands and seals the day and year first above mentioned.

"A. L. CLARK,

"In presence of                         "ELI STILSON.
        "JAMES T. ALEXANDER,
        "CHAUNCEY WEBSTER."

Some criticism is made on the evidence produced to prove this instrument, but we think it was sufficient. The agreement is somewhat vague in some of its provisions, and does not expressly mention the mortgage; but when the position of the parties in respect to the land described in it is shown, the difficulties disappear. ' Clark was to perfect his title by obtaining deeds to the two parcels of land, and then convey one of them to Mrs. Stilson. Now a mortgagee obtains deeds of the lands mortgaged to him and perfects his title by foreclosure; and it is a fair inference from this agreement that the parties contracted in contemplation that a foreclosure should be had. When it was completed and one parcel of the land had been conveyed to Mrs. Stilson, Clark would remain the nominal owner of the other. Whether it was understood that he should be real owner of an absolute fee, or, on the other hand, should only hold this parcel in pledge, we need not inquire, as in any event the parcel conveyed to Mrs. Stilson would be wholly released from any lien; and that is all that is important here. But the stipulation that he should receive interest on his demand until the parcel retained by him should be sold, tends strongly to indicate an understanding that, in consideration of the change made in the form of the security, Clark merely released a portion of the land from the lien of his mortgage.

Subsequent to this agreement Clark proceeded to a statutory foreclosure of his mortgage, and the lands were struck off to him and a deed given. It is now said that the sale was void under the decision in *Lee v. Mason, 10 Mich., 403*, because the two parcels of land were sold together for one gross sum. This being so, it is argued that Clark never perfected his title. This would certainly be true as to any third party who might have been owner of any lien upon or interest in the land; but it is not so clear that such would be the effect as to either Clark or Stilson. The requirement that the sale shall be made in parcels, is in the interest of the party or parties entitled to redeem, and to protect their right to redeem each parcel separately; but if

a party shall in advance, for valuable consideration, waive his right to redeem, it is plain, we think, that he could not rely upon this objection. Neither could the mortgagee make this objection to his own proceedings, where no one else was in position to make it. And we think that was the effect of the arrangement between Clark and Stilson; it did not contemplate any redemption; and a strict compliance with the law for the protection of a right to redeem, when under their agreement none was to take place, was of no consequence to either. It was certainly of no importance to any third person having no interest in the land. If, however, Clark, after a defective foreclosure, deemed it important for any purpose of his own to proceed to a new foreclosure for the correction of any error in his own proceedings, we see no ground on which he could legally or equitably charge the Stilsons with the expense. Mrs. Stilson was entitled to the stipulated conveyance as soon as Clark's deed on the foreclosure by advertisement became absolute according to its terms; and any foreclosure proceedings afterwards could affect only the other parcel; probably on the concession that Clark held that parcel in pledge only, he might proceed to a foreclosure at any time.

Sebring's defense is based upon a supposed vendor's lien, upon the parcel of land on section thirteen. It is conceded that Stilson purchased this land of Sebring, and the purchase price has never been fully paid. December 19th, 1871, Sebring obtained a judgment against Stilson for one thousand three hundred and twenty-four dollars, which is supposed to embrace the balance of this purchase price. The judgment was obtained in a suit in which not only was the purchase price of the land counted on, but also the value of personal property to the amount of one thousand dollars or so. By virtue of an execution upon this judgment, the parcel on section thirteen was levied upon and sold to Sebring, after Clark had sold under the foreclosure at law. The sum at which the sale was made to Sebring was eight hundred dollars, and this now represents the lien,

if it exists at all. But as it is impossible for us to know how much of the judgment represents the price of land, and how much the value of personal property, it is also impossible to support a lien on the idea that it is represented by the judgment. The confusion of demands in the suit, and in the judgment, renders a distinction at this time wholly impracticable. And there is still a further difficulty, namely, that the sale on execution was inconsistent with any claim of lien. A vendor's lien is in the nature of an equitable mortgage; and our statute does not permit the equity of redemption to be sold on execution for the satisfaction of the mortgage debt.—*Comp. L.* § *4667.* The sale thereof would seem to negative the claim of lien.

Our conclusion is, that the only relief which complainant could have been entitled to was a decree for the sale of the lot on section thirteen. Sebring's purchase of this lot on his execution was not paramount, but subordinate, to the right of Clark to realize his debt from that lot, since Sebring by his purchase could obtain no better right than Stilson himself had, and Stilson's title we find to have been subject to a lien for that debt. The decree in accordance with these views must be so drawn as to protect the rights of Mrs. Stilson in the other lot, and she should recover her costs of both courts. As against Sebring, the complainant is entitled to costs.

The other Justices concurred.