WALKER *v.* SCHULTZ.

1. APPEAL AND ERROR—CONSTITUTIONAL LAW—QUESTIONS FIRST PRESENTED ON APPEAL.

On appeal by complainants from an adverse decree in a suit to quiet title, the Supreme Court will not pass on the constitutionality of a statute and dismiss the bill at complainants' request, if the point was not presented or passed upon by the trial court.

2. MORTGAGES—FORECLOSURE—SALE—SEPARATE PARCELS.

It was the duty of a mortgagee, making a sale of separate lots, under section 11139, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13934), to offer the parcels *seriatim*, and a sale in block was voidable at the instance of the persons owning title.

3. DEEDS—BONA FIDES—QUITCLAIM DEEDS.

One who obtains title to real property by quitclaim deed takes only the interest which the grantor had and is not a bona fide purchaser.

4. MORTGAGES.

Purchasers from a mortgagee who conveys by quitclaim deed take an equitable interest subject to the rights of the mortgagor or his grantees to set aside the mortgage sale of the incumbered premises, and redeem from an invalid sale, at which distinct parcels were sold as one.

5. EQUITY—LACHES—DELAY—ESTOPPEL.
   Mere delay for a considerable period does not constitute laches, but unreasonable neglect to assert or enforce rights sufficient in equity and good conscience to operate to the prejudice of others claiming interests, and especially in conjunction with evidence showing a change of condition on the part of such opposing claimants, is treated in equity as laches and bars the enforcement of the right.

6. SAME—QUIETING TITLE—REDEMPTION.
   Complainants' bill to quiet title from an irregular mortgage sale on foreclosure may be treated as a bill to redeem, and the parties be required to do equity by paying to the mortgagee the due proportion of the mortgage debt chargeable to the parcels held by complainants.

Appeal from Ingham; Wiest, J.   Submitted November 19, 1912.   (Docket No. 115.)   Decided May 28, 1913.

Bill by Jennie B. Walker and others against Eva May Schultz and others to quiet title to real property. From a decree for defendants, complainants appeal. Reversed.

*Charles H. Chase (Edwin H. Lyon,* of counsel), for complainants.

*Raudabaugh & Person,* for defendants.

STEERE, C. J.   In this suit complainants filed a bill to quiet title to 23 lots located in Charles Kudner's subdivision of the S. ½ of the N. W. ¼ of S. E. ¼ of section 8, town 4 N., range 2 W., in the city of Lansing, Mich.

In March, 1887, Charles Kudner, the then owner of said property, subdivided and platted the same into 169 lots, duly executing and acknowledging the plat thereof and having the same certified and approved by the surveyor and auditor general, according to law.   This plat was not recorded until between four and five years later, after he had parted with the title

to the property, which he conveyed in December, 1888, by warranty deed, to John Kudner by its proper, unplatted description, as a part of said section 8, town 4 north, of range 2 west.

On September 16, 1892, John Kudner and wife conveyed said property by warranty deed, and by the same description given in the deed from Charles Kudner, to George J. Charles and George W. Prine, for a consideration of $6,000, taking back from them a mortgage on the premises for $2,535, containing the following provision:

"For a part release, a release of lots of not less than ten at a time, in a certain order, by the payment of $15 and accrued interest on said principal sum of $15, on each lot."

The latter parties manifestly purchased the property with the intention of selling it out in lots, and ten days later, September 26, 1892, the plat made by Charles Kudner in 1887 was recorded.

Charles and Prine sold numerous lots, some of which were released by John Kudner according to the terms of the mortgage to him. Various conveyances in relation to the same were put in evidence, all the details of which are not necessary to an understanding of the issue here. Charles and Prine were evidently not altogether successful in this real estate venture, and Kudner proceeded to foreclose his mortgage by advertisement; the property being sold on foreclosure at sheriff's sale, not in parcels, but as an entirety, and bid in by himself. The sheriff's deed to him, dated December 23, 1895, did not describe the property according to the plat, but as described in the mortgage, also excepting therefrom ten lots which he had previously released. The sheriff's deed was recorded December 23, 1895.

On December 22, 1896, five parties, who appear to have been purchasers of certain lots in the subdivision, filed a bill in chancery to set aside the sheriff's

deed, given to John Kudner on foreclosure, also filing and recording a notice of *lis pendens* in the office of the register of deeds of the proper county. An opinion was filed in that case, in the circuit court of Ingham county, on July 12, 1897, in which the court stated that the invalidity of the statutory foreclosure was conceded, and therefore the court would not enter into a consideration of that question, decided that the mistake in description and failure to sell in parcels was an irregularity, and if the mortgagor or his assignees wished to contest the validity of the statutory foreclosure they should file a bill to redeem, giving them 20 days to amend their bill, and holding the matter in abeyance until all parties could be brought into court. No further steps seem to have been taken in that case, and it stands unfinished, with the *lis pendens,* filed at its commencement, remaining of record against the property involved in this suit.

The defendant Eva May Schultz claims to derive her title by a quitclaim deed from John Kudner, dated April 28, 1908, based on the statutory foreclosure of his mortgage.

Complainants trace their title to most of the lots claimed by them through Charles and Prine back to the same source, claiming that the sale on foreclosure of the mortgage for the purchase price was invalid. Their first deed was obtained December 31, 1909, subsequent to the conveyance by Kudner to defendant Schultz.

As to lot 103, one Franklin D. Simons, defendant herein, appears to hold under a direct chain of title back to Charles Kudner, the common source. Lots 159, 160, 161, 162, and 163 were released from the mortgage. Prine and wife deeded them to complainant Walker. A warranty deed from one Caleb W. Horton purporting to convey them to Almon W. Likens and Sarah E. Likens was recorded October 10,

1909; but the record fails to show that Horton had any title to the same.

None of the several defendants except Eva May Schultz appears to have any interest in this litigation which it is desired to assert, and the printed record indicates that the bill has been taken as confessed against all but her. Her title to the 18 lots she now claims to own is contingent on the force and effect of the deed given her by John Kudner and wife in 1908.

Kudner having, in 1892, deeded the same property to Charles and Prine, had no title to convey when he gave the deed to defendant Schultz, unless he had again acquired it by his purchase on foreclosure of the mortgage Charles and Prine had given him for part of the purchase price, when they bought the property in 1892. At the time he sold to them he knew the land had already been platted on paper and that it was the intention to record and perfect such platting. The plat was recorded within ten days after he sold, and he agreed, by the mortgage he took back to secure deferred payments, that he would release lots in the subdivision, under certain conditions of proportionate payment; he subsequently did release certain lots in accordance with such agreement.

It is the claim of complainants that the sale of said premises on foreclosure of his mortgage by Kudner was absolutely void, for the reason that the land, which had been platted with Kudner's knowledge, consent, and assistance, though consisting of distinct tracts or lots held by various owners, was sold as a whole and not in separate parcels, as required under such circumstances, by section 11139, 3 Comp Laws (5 How. Stat. [2d Ed.] § 13934). Most of the lots into which said land was platted had been alienated by various conveyances from Charles and Prine, and were held at the time of the foreclosure proceedings by not less than 36 different owners, in as many different parcels.

It is contended on behalf of defendant that the failure to comply with the statutory requirement was only an irregularity, which did not render the sale void, but, at most, voidable only, giving the holders of the fee of the mortgaged property the right to redeem and have the sale set aside, provided they acted promptly and were guilty of no laches; but that it clearly appears complainants and those from whom they purchased have lain by without complaint for years and acquiesced in the foreclosure, and they are now estopped by their laches from asserting the irregularity complained of, or from raising any objections at this late date to a foreclosure sale made December, 1895.

Complainants allege in their bill that the title to the lands in which they are interested, where the mortgage and sheriff's deed interests are not merged with the original title, is uncertain and not marketable because of questions raised as to the validity of the statutory foreclosure by John Kudner: and they therefore ask that, in case the court finds the foreclosure void, the mortgage interests held by complainants may be reforeclosed and the owners of the original title be permitted to redeem; and, "on the other hand," if the court holds the foreclosure legal, or if irregular and the irregularity such that if the owners of the original title might have redeemed had they acted promptly, but failing to move in time they are now precluded from doing so, then, in such event, that the court will by decree quiet title in favor of the owners holding under the sheriff's deed.

The alternative, or contingent, prayers for relief, present clearly the propositions involved and the reason for this suit, and are as follows:

"That this court adjudicate and determine whether the foreclosure referred to was regular and in accordance with the statute in such case made and provided, or whether the foreclosure, if irregular, involved a

mere irregularity such that, after a lapse of 13 years or more, the title under the sheriff deed has ripened into a valid and subsisting title. In either of which cases your orators pray that the court make and enter up in this cause such decree as will quiet title in favor of the, owners of title under the sheriff deed. That in case the court should find that the said foreclosure was void and of no effect to convey title by sheriff deed under such attempted foreclosure, and this view your orators believe to be the view taken in all such cases by the Michigan Supreme Court; then, in such cases, that this bill be treated as, and have the force of, a bill to foreclose the mortgage in favor of your oratrix, Lydia A. Thomas, and other equitable owners of such mortgage interests."

Defendant Schultz asks no affirmative relief by crossbill or otherwise. In her answer she admits the alleged foreclosure of the Kudner mortgage; denies that it was void; and asserts that her title from that source is valid; denies that the *lis pendens* or the opinion in the suit in relation to which it was filed affect or constitute any cloud on her title; alleges she has a good and sufficient title to the lots she claims, with possession and the right of possession thereof; denies that complainants have any interest in or right to the same; and asks that their bill of complaint be dismissed with costs.

Under the proofs adduced at the hearing, it was disclosed that, in 1908, defendant Schultz, after obtaining a deed from Kudner to the property she now claims to own, took and asserted possession of the same, posting up notices thereon against trespassers, and still maintains such possession.

Counsel for complainants state that they planted their suit upon Act No. 123, Pub. Acts 1909, enlarging jurisdiction of courts of chancery in certain cases; but, fearing that they are "up against a constitutional question," they now suggest, in this court for the first time so far as the record discloses, that the court should, or may, dismiss their bill on jurisdictional

grounds, under the well-settled rule, as stated in *Dolph* v. *Norton,* 158 Mich. 417 (123 N. W. 13)— ·

"That a bill to quiet title brought by one not in possession, against one who is, cannot take the place of an action of ejectment, where the only questions at stake are the legal title and legal right of possession."

They therefore ask, if the court holds such act unconstitutional and the chancery court without jurisdiction, and so dismisses the suit, that their bill be dismissed without prejudice.

Counsel for defendant do not now raise any question as to the validity of said act or jurisdiction of the court, and urge that the parties went to a hearing without questioning either, and claim that, regardless of the act, the court has jurisdiction to hear and decide the issues involved.

The title of said Act No. 123 suggests grave doubts of its applicability, in any event, to a case like this. It is not the policy of this court to pass upon constitutional questions unless the condition of the pleadings and demands of parties to an action render it imperative. But, irrespective of that suggestion, complainants ask for other relief than to have their title quieted; they request that the mortgage foreclosure be passed upon and declared void, and that they be given the right to redeem, as to all their interests in the property where the condition of their title is similar to that of defendant Schultz. This would necessarily discredit and so impair her title, indirectly at least, even if the bill was dismissed as to her. She was made a party to the suit by complainants, and is interested in those questions. If they are to be decided, she has a right to remain a party. She has appeared and answered. The question of jurisdiction was not raised in the circuit court by any one. All parties went to a hearing on the merits, without any objection or suggestion to the contrary, and we think

the validity of the act of 1909 is not now before this court.

So far as the general equities in the case are concerned, they do not appear to predominate strongly in favor of either side. Both manifestly have engaged in this strife for supremacy of title for speculative purposes, and with their eyes open from the beginning. Neither can be said to be innocent parties in any particular; neither has made any substantial improvements on the property; and whatever physical possession either may have had was for strategic purposes rather than use. The land when platted was suburban farm land, which it was thought, or hoped, would some time be wanted, as the city expanded, for urban purposes. The platting, followed by sale and purchase of lots prior to the foreclosure, was the speculative result of temporary inflation. There was no actual need of the property for settlement and improvement as city lots then, nor, so far as shown, even to the present time. While many lots appear to have been disposed of, no improvements on them or occupation for city purposes is shown. The sobering aftermath was a default in Kudner's mortgage and proceedings by him to foreclose. This was in 1895. He then claimed a balance of $2,595 due him on the mortgage. At that time 160 of the 169 lots had been alienated by Charles and Prine, in 36 different parcels, held by as many owners, and yet Kudner had the property sold as an entirety, on a statutory mortgage foreclosure sale, and, excepting certain lots he had released, bid it in as one parcel and had it conveyed to himself by the sheriff according to the unplatted description. He has never since then taken possession of, or physically asserted any dominion over, it so far as shown.

Complainant Walker asserted possession of a portion of the land, under and through her father, some

time before the conveyances relied upon by the respective parties to this suit had been obtained. She testified he had possession of, and at one time cultivated, "most of this property, just a few years ago," and deeded her part of it, and that she still had possession of the lots which she claims until dispossessed by defendant Schultz in 1908. What her or her father's claim of title or right of possession were, previous to getting her deed in 1908, is not shown, however, nor relied on in this case.

Kudner early learned of the defects in his foreclosure proceedings, by the *lis pendens* and suit against him, and the announced opinion of the court that it was invalid. Those proceedings stood, and stand, as a public notice of the alleged invalidity; apparently, values had then reached an ebb where neither the complainants cared to go to any further trouble or expense in filing a bill to redeem their few lots, as the court had said they might, nor did Kudner care to go to the trouble and expense of having the suit dismissed to relieve his foreclosure from the cloud upon it, nor to retake possession of the property, or pay taxes assessed against it. His subsequent interest and activities in that connection seem to have been limited to quitclaiming the property, as one of the witnesses testifies, "right along, right and left, without knowing which it was or how it was," to parties who approached him, whenever there was any inducement for him to do so.

In 1908 the growth of Lansing apparently made such property more attractive, and defendant Schultz (who had a husband doing business for her as her agent, and who had some tax titles) procured a quitclaim deed from Kudner of the 18 lots she now claims, "in consideration of one dollar and other good considerations," and proceeded to disturb complainants' "quiet enjoyment" by taking possession of the prop-

erty to the extent, at least, of posting up notices, asserting ownership, and warning away trespassers. The tax titles, of which there is oral testimony, are not, however, produced nor relied upon in this case. Thus aroused, complainant Walker and her associates took steps to circumvent this move by procuring numerous deeds from various owners, and particularly from those who held the original title coming from Charles Kudner independent of the mortgage foreclosure on which defendant Schultz relied.

Under the conceded facts in this case, Kudner's foreclosure sale and purchase of the property as an entirety, and not in distinct lots or parcels, was a palpable disregard of the plain provisions of section 11139, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13934). To have the mortgaged subdivision sold in separate parcels was a substantial right of the owners of the fee, designed to protect the various interests of separate owners from prejudice or loss. This provision of the statute has several times been passed upon by this court and sales made in violation of it defeated. *Lee* v. *Mason*, 10 Mich. 403; *Crane* v. *Sumner*, 31 Mich. 199; *Clark* v. *Stilson*, 36 Mich. 482; *Durm* v. *Fish*, 46 Mich. 312 (9 N. W. 429); *Keyes* v. *Sherwood*, 71 Mich. 516 (39 N. W. 740); *Hawes* v. *Insurance Co.*, 109 Mich. 324 (67 N. W. 329, 63 Am. St. Rep. 581); *O'Connor* v. *Keenan*, 132 Mich. 646 (94 N. W. 186). These decisions settle beyond possibility of doubt that the statutory requirement violated in this case is not merely directory, that the irregularity went to the foundation of the purchaser's title, and the sale was invalid. The only question which concerns this case is whether the attempted, or defective, foreclosure put the purchaser at such foreclosure sale in a more advantageous position, and vested him with additional rights by which, under the facts in the case, he can successfully invoke the doctrine of laches against the

mortgagor or his grantees when they fail to promptly attack the defective sale.

It is the contention of complainants that the foreclosure was not only irregular and invalid, but absolutely void and a nullity; that therefore the legal relations of the parties is as though no attempt had been made to foreclose.

It is true that this court in some of the foregoing cases has used very positive language when declaring such sales defective. It has said that where the statute is not complied with they "cannot be regarded as complete," "must fail," "are void," "absolutely void"; and yet, while so declaring them, the court has nevertheless given such sales certain ·recognition when the mortgagor has been the moving party seeking to set them aside, and has established the rule that bills filed for that purpose shall be treated as bills to redeem, on the principle that he who seeks equity must do equity, and the mortgagor must pay the debt secured by the mortgage before a court of chancery will release to him the security pledged for the debt. Since the decision in *Fosdick* v. *Husan,* 21 Mich. 567, the decree in such cases ·no longer works a strict foreclosure, after the time allowed to redeem expires, as formerly; but, if default is made in payment of the amount actually due within a specified time, the premises can be again sold as in foreclosure. Such would unquestionably have been the rights of the respective parties had the mortgagors or their grantees seasonably taken the initiative and proceeded against the mortgagee or purchaser at the foreclosure sale to have the same canceled. On the other hand, had the purchaser at the foreclosure sale promptly proceeded, after the statutory period for equity of redemption expired, to assert his title and obtain possession by summary proceedings or ejectment, he would have failed because the foreclosure was invalid. *Durm* v. *Fish, supra; Keyes* v. *Sherwood, supra.* Can it be

said that he, being out of possession, would perfect or strengthen his title by delay, where the rights of no innocent parties intervened?

This brings us to the question whether the lapse of time in this case has interposed laches in favor of or against either party which changes their relative rights. An important consideration in approaching that subject is the fact that the case is bald of equities in favor of any intervening innocent parties.

The mortgagee who was the purchaser took no steps to repossess himself of the property or perfect by resale a defective foreclosure of the kind this court has held imperfect, invalid, and void. The owners of the fee of the land in dispute, entitled to possession constructively, and presumptively, in the absence of anything to the contrary, in possession, made no move to nullify the defective foreclosure proceedings.

The interest which the parties to this suit acquired in the property which they are now litigating comes to them by quitclaim deeds given in recent years. They were not good faith purchasers; they obtained no more interest and no better title than their grantors held. *Hughes* v. *Jordan,* 118 Mich. 27 (76 N. W. 134).

"Under the cloak of quitclaim deeds, schemers and speculators close their eyes to honest and reasonable inquiries, and traffic in apparent imperfections in titles. The usual methods of conveying a good title— one in which the grantor has confidence—is by warranty deed. The usual method of conveying a doubtful title is by quitclaim deed. The rule is wise and wholesome which holds that those who take by quitclaim deed are not bona fide purchasers, and take only the interest which their grantors had." *Peters* v. *Cartier,* 80 Mich. 124 (45 N. W. 73, 20 Am. St. Rep. 508).

See, also, *Beakley* v. *Robert,* 120 Mich. 209 (79 N. W. 193) ; *Johnson* v. *Williams,* 37 Kan. 179 (14 Pac. 537, 1 Am. St. Rep. 243) ; *Dickerson* v. *Colgrove,* 100 U. S. 578.

The history of this case indicates very clearly that the title Kudner was quitclaiming was not one in which the grantor had confidence. The quitclaim deeds given by him to defendant Schultz and others after he foreclosed his mortgage would simply put them in his place with whatever rights he then had, and, if his foreclosure failed, the effect would be to reinstate and preserve unimpaired the lien of his mortgage. In such event they would hold, by virtue of their quitclaim deeds, an equitable assignment of such portion of the mortgage interest as applied to the respective lots covered by the conveyance he gave.

"Laches," as interpreted by courts of equity, is not tested by mere delay for a certain period, as in case of the statute of limitations, but is such unreasonable neglect to assert and seek to enforce a right as will constitute in equity and good conscience a bar to recognition. If lapse of time without asserting their rights, standing alone, constituted laches in this case, it is by no means unilateral, and is imputable alike to both parties. But mere lapse of time does not necessarily constitute laches. As a rule it involves other considerations. It means that negligence or omission to assert a right which, considering the lapse of time in connection with other facts and circumstances prejudicial to the interests of the adverse party, render it unjust and inequitable to recognize such right when finally asserted. In this case the condition of the title to the property was such that both parties had rights which they might have asserted, but failed to do so for a certain time. Where the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot as a rule be recognized. *Parker* v. *Hotel Co.*, 96 Tenn. 252 (34 S. W. 209, 31 L. R. A. 706).

In *Sanborn* v. *Eads*, 38 Minn. 211 (36 N. W. 338),

where a bill filed to remove a cloud upon the title caused by an alleged unauthorized mortgage foreclosure was demurred to on the ground of laches, it appearing on the face of the bill that more than 15 years had elapsed after the cause of action accrued, the court said in overruling the demurrer:

"The mere lapse of time does not constitute laches, unless the circumstances were such as to make the delay blamable. Whether the delay has been culpable or not may obviously depend upon many facts and considerations, such as the length of time (which cannot be fixed by any definite rule, this being a subject of discretion under the circumstances of each case), the knowledge of the facts, actual or imputable, the consequences as respects others than the plaintiffs, and perhaps other things."

And of like import *Burke* v. *Backus*, 51 Minn. 174 (53 N. W. 458), in which case 17 years elapsed between the foreclosure and commencement of an action to set it aside.

After Kudner conveyed the property to Charles and Prine by warranty deed, in 1892, they and their grantees thereafter had constructive, if not actual, possession, until disturbed or dispossessed in 1908 by defendant Schultz. Up to that time complainants and their grantors, if only in constructive possession, were in better position to invoke the doctrine of laches than any one out of possession. We do not, however, think the record presents a case for application of the equitable doctrine of laches in favor of either of these litigants. No innocent party has intervened or been misled, or injured, by the delay. The property has lain, for the most part, unimproved and unoccupied. What occupation or possession has been shown was unaccompanied by any substantial improvements, was of doubtful tenure and for strategic purposes, rather than in good faith for use and development. There is nothing except lapse of time to suggest culpable delay,

and, as we have before stated, that, standing alone, does not constitute laches. If it raises any presumptions, they are equally strong against both parties.

Under the state of facts disclosed by this record, we conclude no paramount laches is shown which raises equities impairing the rights of either party as they existed at the time of the invalid foreclosure, and they should be adjusted according to the rules heretofore stated.

The court, having once acquired jurisdiction of this matter, may exercise it to make final disposition of the entire controversy, and grant full relief.

The foreclosure sale under Kudner's mortgage being invalid, the holders of original titles to lots covered by it may redeem by paying to the parties holding, by quitclaim deed or otherwise, assignments of the mortgage interests covering each or any of said lots, the sum of $15 on each lot with accrued interest since the date of said mortgage, according to the provisions of said mortgage relative to a part release, within 60 days after the settlement of the decree herein; in default whereof the premises not redeemed may be sold as in case of foreclosure. Complainant Walker is entitled to a decree, by default, quieting her title as to lots 159, 160, 161, 162, and 163 as prayed.

The decree dismissing complainant's bill will be set aside, and a decree in accordance with this opinion entered in this court, with costs to complainant.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.