### JEROME *v.* COFFIN.

1. MORTGAGES—NOTICE OF PLATTING MORTGAGED PREMISES.

In a suit to redeem from a mortgage foreclosure sale of land, the claim of the mortgagee that neither he nor his agent knew, at the time of said sale, that the mortgaged land had been platted subsequent to the execution of the mortgage, *held*, not sustained by the record.

2. SAME—FINDING THAT CITY HAD OCCUPIED DEDICATED STREETS BEFORE SALE JUSTIFIED.

The finding of the court below that the city had occupied dedicated streets and alleys, or portions thereof, for the purpose of grading and putting in sewers and water mains previous to the foreclosure sale of the land platted, *held*, justified by the record.

3. SAME—BURDEN OF PROOF THAT MORTGAGED PREMISES WERE NOT OCCUPIED AS ONE PARCEL.

Mortgagor, contending that foreclosure sale in gross was invalid under 3 Comp. Laws 1915, § 14955, requiring

premises not occupied as one parcel to be sold separately, has the burden of proving that, at the time of the sale, the premises involved were not occupied as one parcel.

4. SAME—FORECLOSURE—PURPOSE OF REQUIRING THAT SEPARATE PARCELS BE SOLD SEPARATELY.

The provision in 3 Comp. Laws 1915, § 14955, requiring mortgaged premises not occupied as one parcel to be sold separately on foreclosure sale, is in the interest of parties entitled to redeem, and designed to protect the right to redeem each parcel separately.

5. SAME—SALE IN BULK OF PLATTED LAND VOID.

Where, subsequent to the execution of a mortgage and before the foreclosure sale, the premises had been platted and lots sold, which were occupied by the purchasers, the foreclosure sale of the land in bulk was void under 3 Comp. Laws 1915, § 14955, which requires that separate parcels be sold separately.

Appeal from Wayne; Collins (Joseph H.), J., presiding. Submitted April 19, 1928. (Docket No. 20, Calendar No. 33,388.) Decided July 24, 1928.

Bill by George Jerome against Howard E. Coffin to redeem from a mortgage foreclosure sale. Glenn A. Carpenter, the city of Detroit, and others were permitted to intervene as parties defendant. From a decree for plaintiff and interveners, defendant appeals. Affirmed.

*Connolly & Henderson,* for plaintiff.

*Beaumont, Smith & Harris,* for defendant.

*Carl K. Rix,* for interveners Carpenter *et al.*

*Paul T. Dwyer,* for intervener city of Detroit.

FELLOWS, J. Lena M. Carle was for many years the private secretary of defendant Howard E. Coffin. On November 22, 1915, she held title (but for Mr. Coffin) to:

"The south quarter of the southwest quarter of the northwest quarter of section 15, town 1 south, range 11 east, containing 10 acres of land, more or less."

This land was then situated in Greenfield township adjoining Detroit, and shortly afterwards was annexed to the city. On this date she deeded the land to plaintiff, George Jerome, and took back a mortgage for $7,500. It is his claim that he paid in cash $9,000, and her claim is that she received but $7,500. Doubtless the difference was absorbed by the dealers handling the transaction; it is unimportant, however. It is admitted that plaintiff advised Miss Carle and her attorney who prepared the papers that he was buying the land for subdivision purposes, and the following provisions were incorporated in the mortgage:

"Said mortgagor reserves the right to release all or any part of the said land from the operation of this mortgage, in case said land is subdivided, upon payment to mortgagee of a sum of money to be agreed upon for each lot, the sum to be determined according to the size and location of the lot as soon as the said land is subdivided.

"Said mortgagee has agreed to sign a plat of said premises prepared by mortgagor."

Shortly after plaintiff purchased the property, it was platted as "Jerome subdivision;" there were 102 lots, some being business and others being resident lots. There were streets on two sides, four running through the subdivision, and alleys at the rear of all lots, 3.53 acres being dedicated to the public for these purposes. The plat was approved by all necessary public bodies and recorded. Miss Carle did not sign it, although her testimony was that she would have signed any plat Mr. Jerome would have asked her to. Twenty-eight of the lots were sold on contract. Plaintiff was slow in his payments, behind most of the time, but did pay $2,000 on the principal. The interest was never paid when due.

On October 15, 1920, the mortgage having been assigned to him, defendant began statutory foreclosure by advertisement, in which the premises were described as they were in the mortgage.   On February 15, 1921, the premises were sold on such foreclosure as a single parcel to defendant for the amount due on the mort-. gage.   Mr. Jerome did not redeem within the statutory period, but on being advised that the sale had taken place and that the period for redemption had expired, he tendered the amount due, which was refused.   This bill to redeem was then filed.

Mr. Jerome settled with some but not all of the purchasers.   They were not made parties to the bill. Purchasers of five lots have intervened; there are several others who have not.   The city of Detroit has also intervened.   There were several objections made against the validity of the foreclosure proceedings, but before taking up that question, we should state our conclusions on some of the disputed facts.   It is insisted that neither defendant nor Miss Carle knew or should have known before the sale that the premises had been subdivided.   We can not on this record so find.   If they did not know it was because they absolutely closed their eyes.   That it was bought for that purpose all concede; the clause we have quoted was inserted in the mortgage to effectuate that purpose.   Knowledge that it had been subdivided was, we think, conveyed to Miss Carle in a letter to her from plaintiff in which he speaks of the property as the Jerome subdivision and says that but very little of the property has been sold.

The other dispute is as to whether the city had occupied the dedicated streets and alleys or portions thereof for the purpose of putting in sewers and water mains and grading the same before the foreclosure sale. It is defendant's contention, largely based on conditions in the fall of 1922, and photographs then taken, that the work claimed to have been done on the streets and

alleys had not been done at that time.   It is the claim
of plaintiff and of the city that the city had taken
possession of the dedicated streets and alleys, or some
portions thereof, and had made improvements before
the sale.   This claim is sustained by documentary
evidence, by testimony of city employees, and by testi-
mony of other disinterested witnesses.   We quote
from some of the testimony in the case.   Charles F.
Hawman, an employee of the city engineer's office,
testified to putting in sewers in the alleys.   He said:

"Sewer 3332, which would be way over to the eastern
portion was put in first.   It was put in the alley east
of Dexter.   Dexter is the eastern street of this sub-
division, known on the original plat as Glen, I think.
*   *   *   I laid out this portion myself, all this land
here, on December 20, 1920.   I was actually on the
ground and laid that out.   I imagine it was put in a
few days after that.   I have the accepted date of com-
pletion, when it was accepted.   My records will show
the day the sewer was put in.   The day I laid it out
was on December 20, 1920, and we accepted it on
January 25, 1921; common council authorized final
payment on it.   It was all done by the 25th of Jan-
uary, 1921.   And it served these lots in Jerome sub-
division that I have enumerated.   *   *   *   After the
work was completed there would be a hump in the
alley or wherever we laid sewers."

James E. Hornshaw, an employee in the water de-
partment, testifies to laying water mains in Puritan
street in the subdivision as early as 1918, and in
Livernois late in 1920 and early in 1921.   John J.
Knight, another city employee, testified to grading the
streets in the subdivision.   We quote from what he
says:

"I recall I had connection with work on those streets
in the fall of 1919.   We graded, put the grader down
these particular streets—Petoskey, Quincy, Holmur and
Dexter; that's the name of the streets that were there
at that time, right there.   Those were the old names.
I was superintendent of the men who done that work

of the road grader. I saw it done. Just the streets. We never did grade alleys. Anybody goes up there now they see those streets. Visible right now. As I remember, the streets were 50 feet wide and 18-foot alleys on that particular subdivision."

Other disinterested witnesses testify to visiting the subdivision before the foreclosure and seeing street signs, improvements in the streets, and other conditions then existing. The trial judge after hearing the testimony and viewing the premises found the facts on this proposition to be as contended by plaintiff and the city, and we find no reason to disagree with such finding.

There are numerous objections raised to the foreclosure sale. The trial judge considered but one, and we agree that this objection is fatal to the validity of the foreclosure proceedings. Section 14955, 3 Comp. Laws 1915, reads as follows:

"If the mortgaged premises consist of distinct farms, tracts, or lots not occupied as one parcel, they shall be sold separately, and no more farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale, with interest and the costs and expenses allowed by law; but if distinct lots be occupied as one parcel, they may in such case be sold together."

Plaintiff insists that the premises here involved were not at the time of the sale occupied as one parcel, and that for this reason the sale in gross was invalid. Upon this question, the burden rests on plaintiff. While other States have regarded similar provisions as directory only, this court has treated them as mandatory, and has frequently sustained bills to redeem from sales which have not followed the statute. The provision is in the interest of parties entitled to redeem, and designed to protect the right to redeem each parcel separately. Twenty-eight of the lots have been sold on contract. Doubtless all the vendees in such

contracts would insist, as interveners insist, that they have at least a constructive occupancy of the lots so purchased.    But  beyond  this lies the fact that 3.53 acres   were  dedicated to the public for streets and alleys.    The record does not disclose just how much of the dedicated land had been occupied by the city, but it does disclose that before the sale some of it at least had come under the occupancy of the city for street purposes, for alley purposes, for sewers, and for water mains, in other words, for the public use. Upon this record we are unable to distinguish the instant case from *Walker* v. *Schultz,* 175 Mich. 280. That case exhaustively considers the question.    It was there said by Chief Justice STEERE, who wrote for the court:

"Under the conceded facts in this case, Kudner's foreclosure sale and purchase of the property as an entirety, and not in distinct lots or parcels, was a palpable disregard  of the plain provisions of section 11139, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13934).    To have the mortgaged subdivision sold in separate parcels was a substantial right of the owners of the fee, designed to protect the various interests of separate owners from prejudice or loss.    This provision of the statute has several times been passed upon by this court and sale made in violation of it defeated.    *Lee* v. *Mason,* 10 Mich. 403; *Crane* v. *Sumner,* 31 Mich. 199; *Clark* v. *Stilson,* 36 Mich. 482; *Durm* v. *Fish,* 46 Mich. 312; *Keyes* v. *Sherwood,* 71 Mich. 516; *Hawes* v. *Insurance Co.,* 109 Mich. 324 (63 Am. St. Rep. 581) ; *O'Connor* v. *Keenan,* 132 Mich. 646.    These decisions settle beyond possibility of doubt that the statutory requirement violated in this case is not merely directory, that the irregularity went to the foundation of the purchaser's title, and the sale was invalid."

Practically every case in which this court has considered this statute has been cited to us by counsel. We cannot in the compass of this opinion undertake an analysis of them, nor would it be of benefit so to

do.   We are satisfied as matter of fact and as matter of law that the premises in question were at the time of the sale occupied as distinct tracts and lots, and, such being the case, could not, under the statute, be sold as one parcel.   Defendant could not have been prejudiced by following the statute, while plaintiff and interveners were prejudiced by his failure so to do. The undisputed testimony shows that the premises were worth $100,000 when he bid them in as one parcel for $6,042.61.

The decree will be affirmed, with single costs to plaintiff and interveners.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.