CORNELL v. CRANE.[1]

1. ASSUMPSIT—MONEY HAD AND RECEIVED—ASSIGNMENT OF MORT-
GAGE—RESCISSION.
One who takes an assignment of a mortgage in reliance upon
the representation of the assignor that it is a first mortgage
may rescind the agreement upon discovering the falsity of
the representation, and recover back the amount paid for the
assignment in an action for money had and received.

2. FRAUD—ESTOPPEL.
An assignor of a mortgage who falsely represents that it is a
first mortgage, and that the property is good security, upon
which representations he knows that the assignee relies in
taking the assignment, cannot claim that the latter is not
entitled to relief because he might have discovered the facts
by an examination of the abstract of title.

3. SAME—LACHES—QUESTION FOR JURY.
Whether an assignee of a mortgage was guilty of such laches as
would prevent a rescission for false representations was a
question for the jury, where it appeared that formal notice of
rescission was served six months after the falsity of the repre-
sentations was first ascertained, and that the intermediate
period was largely occupied in obtaining information as to the
facts, for which delay the assignor was in part responsible.

Error to Kalamazoo; Buck, J. Submitted June 9,
1897. Decided June 28, 1897.

*Assumpsit* by Hannah L. Cornell against Edgar A.
Crane for money had and received. From a judgment
for plaintiff, defendant brings error. Affirmed.

*E. M. Irish* and *Alfred J. Mills*, for appellant.

*A. M. Stearns* (*Dallas Boudeman*, of counsel), for
appellee.

---

[1] Rehearing denied September 15, 1897.

MONTGOMERY, J.    This is an action for money had and
received.    Although the record is voluminous, the real
issues determined by the jury were simple, the facts are
not much complicated, and the rules of law governing the
case are well understood.    The case, as made by plaintiff,
was that in March, 1893, defendant held a mortgage of
$2,200 on 160 acres of land in Van Buren county, which
he represented was a first mortgage, and that the prop-
erty was good security; that he at the time furnished to
plaintiff a statement in writing, setting forth the facts in
regard to the value of the land, in which appeared a state-
ment that it was assessed for $3,000 for the year 1892,
that its real value was $5,000, and its value at forced sale
$4,000; that in December, 1894, Mr. Breck, of Paw Paw,
who, it would appear, had been concerned in the matter of
making this loan, died, and defendant sent word to plain-
tiff to bring in to him any Van Buren county mortgages
which she had taken of him, as he was going to look mat-
ters up; that the assignment from defendant to plaintiff
had not been recorded; that defendant took the assign-
ment, saying it ought to be recorded; that a few days
later he sent word to plaintiff to come again to see him,
and then informed her that there was a prior mortgage on
this property, which mortgage amounted to $2,237.90 on
the face of it.    At this time plaintiff charged defendant
with representing at the time of the purchase that her
mortgage was the first mortgage.    Defendant denied this,
and charged whatever fault there was in the matter to
Mr. Breck, and disclaimed responsibility on his own part.
Plaintiff testified that she returned to her home, examined
the papers, and wrote a note to defendant, stating that the
mortgage in question was assigned by defendant to her,
and that Mr. Breck's name did not appear in the trans-
action, and she was unable to see how he (Breck) could
be responsible under the assertion that the mortgage was
the first mortgage.    She testified that in these conversa-
tions the defendant did not inform her who held the prior
mortgage, and that he stated to her that a part of the

prior mortgage had been paid, but that he did not know how much. She also testified that defendant told her that he thought the property was sufficient to pay both mortgages.

Plaintiff, on the 13th of March, 1895, wrote to the mortgagor, stating that the interest was due March 6th, and, as she had not heard from him (the mortgagor), she wrote to remind him of it; further stating that she took the mortgage as a first mortgage, but found that she was deceived in the matter, and asking for information as to who then held the first mortgage, and as to how much was due upon it. In response to this, the mortgagor visited plaintiff at her home in Kalamazoo, and stated that he could never pay the two mortgages. She then took him to the office of her counsel. Plaintiff further offered testimony to show that from this on her counsel, Mr. Stearns, endeavored to see the defendant and adjust the matter with him; that he was told by defendant that he had papers in his possession which would show that plaintiff knew that the mortgage was not a first mortgage when she received it, and that negotiations for a compromise took place between the parties; that he had difficulty in finding defendant at first, but that finally, on the 29th of June, he served notice upon the defendant of a rescission of the contract, tendered back the interest which plaintiff had received upon the mortgage, and demanded a refunding of the money which she had paid. It was also claimed that the plaintiff asserted that the property was not in other respects as represented by the written statement, in that it was not of the value stated; that it was farther from a school-house than stated; and that there was not as much improved land as stated. It further appeared that there had been paid upon the original mortgage, at different times, namely, in May, 1893, and March, 1894, $1,039.

1. It is contended that the plaintiff cannot maintain this action upon the common counts in *assumpsit*. This proposition was not urged upon the hearing, and it is

without force.   See *Johnson* v. *Seymour*, 79 Mich. 156;
*Coon* v. *Anderson*, 101 Mich. 295.

2. It is contended that the plaintiff had within her
power the means of knowing that the mortgage in ques-
tion was not a first mortgage, as an abstract of title was
in possession of defendant, and furnished her when the
transaction was closed.   She testified, however, that she
made no examination of the abstract of title, relying upon
the defendant's representations; that, had she examined
it, she would have known no more about it than before
the examination was made.   There is enough to show
that defendant knew that plaintiff was relying upon the
representations which he made, and, under such circum-
stances, it does not lie with him to charge plaintiff with
negligence in ascertaining the true state of facts.

3. The point most urged is that the plaintiff did not act
promptly in rescinding the contract, after ascertaining
the facts.   The general rule is that a party defrauded,
who seeks to rescind, must act with reasonable promptness
after discovering the facts.   *Wylie* v. *Gamble*, 95 Mich.
564; *Western Electric Co.* v. *Hart*, 103 Mich. 483;
*Condon* v. *Hughes*, 92 Mich. 367.   But it is equally true
that what is a reasonable time must depend upon the cir-
cumstances of each particular case, and what would be
reasonable under one state of facts might not be under
another.   *Gridley* v. *Tobacco Co.*, 71 Mich. 532.   And
it has also been held that laches are not imputed during
the time the parties are negotiating for a settlement.
*Seymour* v. *Rolling Mills*, 56 Mich. 117.   In this case
there was evidence tending to show that the plaintiff had
not, prior to the time that she placed the matter in the hands
of her counsel, in March, 1895, full information as to the
situation.   She might well have preferred, if she should
find that the prior mortgage had been paid in large part,
and that the land was of the value represented, and was
in fact good security for both mortgages, to have elected
to redeem from the prior mortgage, or to have suffered
the loss of a portion of her claim.   According to her

testimony, the representations made by defendant were that the property was sufficient to cover both mortgages, and that a portion of the prior mortgage had been paid. She had not the means of ascertaining what portion of the prior mortgage had been paid, as she did not know who held the mortgage, and it is certain that she did not know in fact how much remained unpaid upon the first mortgage. We think it was a question for the jury as to whether she acted with reasonable promptness in ascertaining these facts, and that it was not error to submit that question to the jury, under the circumstances of this case.

The jury were instructed, at the request of defendant, that a person who claims to have been defrauded must act promptly, and, if he would rescind the contract complained of, he must do nothing in affirmance of it after he ascertains the facts; and that if plaintiff, after being informed that there was a prior mortgage on this land, still preferred to look to Henry Kroegel, the mortgagor, for her interest money, she could not after that tender back the mortgage to Mr. Crane, and legally demand of him the money she had paid for the assignment. The jury were further instructed that if they found that plaintiff did not know of the first mortgage (at the time she purchased the mortgage in question), but, after learning of its existence, unreasonably delayed to rescind the contract, and elected to look to Mr. Kroegel for the payment of the mortgage, she would not be entitled to recover; and that if, after being informed of the facts, plaintiff still relied on getting the money from Mr. Kroegel, and endeavored to collect the interest from him, then she made her election that way, and could not afterwards resort to a rescission of the contract in order to get the money of defendant. We think these instructions sufficiently favorable to defendant, in view of the special circumstances of the case, which tended to show that plaintiff had not full information of the facts until March, 1895. We think the rule is not so rigid as to impose upon a party occupying the position of this plaintiff the duty to elect, so long

as she did not know definitely what her election would imply, and particularly where the jury might well have found that the delay was occasioned by assurances, given by defendant, that the property was sufficient to cover both mortgages, and that a portion of the first mortgage had been paid, but that how much was not known.

4. Some criticism is made upon the manner of examination of defendant by plaintiff's counsel. We discover nothing in the record which we think would justify the court in either reversing the case upon this ground or passing criticism upon the conduct of counsel for plaintiff. We are not impressed that there was any purpose of violating the proper rules of procedure, or that any injustice was done to defendant by the course of examination.

We discover no error in the proceedings.

The judgment will be affirmed.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., did not sit.