HETH v. OXENDALE.

1. CONTRACTS—FRAUD—RESCISSION—LACHES—EQUITY.
    The defense of laches will not be permitted to defeat the right to rescind a contract for fraud unless it would be inequitable to deny it.

2. SAME—LAPSE OF TIME MAY BE CONCLUSIVE OF AFFIRMATION NOTWITHSTANDING FRAUD.
    Lapse of time without rescinding a contract for fraud is evidence of affirmation of the contract, and may be treated as conclusive where the lapse is unreasonable; and especially where, in the meantime, conditions have so changed that rescission would be prejudicial to the other party.

[1]Cancellation of Instruments, 9 C. J. § 81; Equity, 21 C. J. § 212; [2]Cancellation of Instruments, 9 C. J. §§ 81, 82; Equity, 21 C. J. § 218; 6 R. C. L. 928; 2 R. C. L. Supp. 246; 4 R. C. L. Supp. 452; 6 R. C. L. Supp. 420.

3. SAME—LACHES—LAPSE OF TIME SHOULD BE CONSIDERED WITH OTHER EVIDENCE.

Evidence of lapse of time should be considered with the other facts and circumstances of the case in reaching a determination on the defense of laches.

4. EXCHANGE OF PROPERTY — FRAUD — RESCISSION — LACHES — EQUITY.

Although plaintiffs delayed nearly three years before rescinding a contract for an exchange of property for fraud, where it appears that they were elderly, inexperienced, simple people, that defendants gained their confidence and trust, that plaintiffs received practically nothing in exchange for their property, and that defendants have not been prejudiced by the delay, it would be inequitable to sustain the defense of laches.

5. CONTRACTS—FRAUD—RESCISSION—RULE AS TO STATUS QUO.

The rule that one who seeks to rescind a contract for fraud must restore his adversary to the position he was in at the time of the contract applies only to a contract partly executed, and not to one wholly executory.

6. EXCHANGE OF PROPERTY — FRAUD — RESCISSION — RULE AS TO STATUS QUO NOT APPLICABLE TO CONTRACT WHOLLY EXECUTORY.

Where defendants' agreement to give plaintiffs a one-half interest in a mortgage in exchange for city lots was wholly executory, no formal assignment having been made, and plaintiffs have received nothing, their failure to restore or offer to restore to defendants what they have received is no bar to their right to rescind the contract for fraud.

7. EQUITY — RESCISSION — JURISDICTION NOT LOST BY ENTERING MONEY DECREE.

In a suit to rescind a contract for defendants' fraud, where plaintiffs established a right to equitable relief, and the court had jurisdiction of the cause and might enter a decree, it did not lose jurisdiction by entering a money decree, where defendants had disposed of all of the property received except one lot, since it might have granted restoration of that lot and decreed compensation in money for the remainder due plaintiffs.

Appeal from Ingham; Collingwood (Charles B.), J.

[3]Equity, 21 C. J. § 218; [4]Cancellation of Instruments, 9 C. J. § 81; [5]Id., 9 C. J. § 93; 30 L. R. A. 44; 6 R. C. L. 936; 2 R. C. L. Supp. 249; 5 R. C. L. Supp. 380; 6 R. C. L. Supp. 420; [6]Id., 9 C. J. § 93; [7]Exchange of Property, 23 C. J. § 98.

Submitted January 5, 1927.    (Docket No. 15.)    Decided April 1, 1927.

Bill by Myron H. Heth and another against William A. Oxendale and another for the rescission of an exchange of property on the ground of fraud.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*Eldred & Gemuend,* for plaintiffs.

*L. B. Gardner,* for defendants.

CLARK, J.    Plaintiffs, husband and wife, elderly, of no considerable business experience except farming, resided on a farm near Ionia.    The record indicates that they are kind, simple, and credulous.    Mr. Heth was in poor health.    Defendant William A. Oxendale is a real estate dealer and speculator.    The other defendant is his wife.    By chance he learned that plaintiffs had a piece of land for sale.    The land was conveyed to defendants in exchange for a house and some lots in Lansing.    Plaintiffs engaged Mr. Oxendale to look after the Lansing property, collect rents, pay taxes, etc., which he did.    Defendants entertained plaintiffs and visited at their home.    Plaintiffs became fond of them, trusted them.    The Lansing property was not productive.    Mr. Oxendale went to plaintiffs' home,

* * * "and he wanted to trade for the lots here, he said that the war was over and the Lansing property wasn't the best at that time, and he wanted us to trade for something different and we told him that we didn't know anything about stocks, we didn't want it; and then he asked us how we would trade for a good mortgage?    And we told him if the mortgage was good and all right, we was willing to trade and he told us he had two mortgages, but this one was the best.    He told us this was a gilt-edged mortgage and those fellows would pay it in a year or two at the outside.    I told him that's what we wanted, we couldn't

look after the property and his health was poor and he could not look after it."

The mortgage in question was conceived in fraud. It was in the sum of $8,000, ran to Mr. Oxendale, covered a poor and seemingly abandoned hotel in the village of Fowler, of comparatively small value, and the purported mortgagors had stipulated that they were "bound only so far as the real estate covered by this mortgage." Relying on and deceived by Mr. Oxendale's representations as to the mortgage, plaintiffs entered into an agreement with defendants by which they were to have a one-half interest in the mortgage in exchange for their Lansing property worth about $4,000. This agreement, neither witnessed nor acknowledged, signed by all of the parties on May 1, 1920, is executory.

Pursuant thereto, plaintiffs gave to defendants a warranty deed of the Lansing property, but they have not received nor have they sought a formal assignment of a one-half interest in the mortgage. Of Mr. Oxendale's giving the executory agreement to Mr. Heth, we quote:

"He said 'here is your mortgage.' I said, 'that is a funny mortgage,' and he says 'it is all right between you and I.'"

And so it stood until the following spring when Mr. Heth first saw the property in Fowler and plaintiffs first discovered the fraud. Within about a year after May 1, 1920, defendants disposed of the Lansing property, except one lot, which they had at time of hearing. Mr. Heth attempted several times to see Mr. Oxendale but did not do so. Nothing more was done until February 12, 1923, when a notice of rescission was served on Mr. Oxendale. On February 20, 1923, the bill of complaint was filed seeking rescission, praying restoration of the Lansing property, and in the alterna-

tive a money decree.    Plaintiffs had money decree for $3,700.    Defendants have appealed.

The studied fraud is manifest, and requires no discussion.

The principal defense is laches.    But this defense will not be permitted to defeat the right to rescind unless it would be inequitable to deny it.    *Davis* v. *Louisville Trust Co.*, 181 Fed. 10 (30 L. R. A. [N. S.] 1011).

Lapse of time without rescinding is evidence of affirmation of the contract, and the evidence may be treated as conclusive where the lapse is unreasonable. 13 C. J. p. 617, and cases cited.    Especially is this true where during the time conditions have changed so that rescission would be prejudicial of the other party.    *Walker* v. *Schultz*, 175 Mich. 280.    But the evidence of lapse of time should be considered with the other facts and circumstances of the case in reaching a determination on such defense.    *Cornell* v. *Crane*, 113 Mich. 460.    The delay here is great but it does not appear that defendants have been prejudiced by it.    The disparity between what plaintiffs gave and what they got is so great that it is improbable that they would abide the transaction.    Their inexperience and simplicity and their relations with defendants should be noted.    Despite the lapse of time we conclude that on the peculiar facts and circumstances of the case it would be inequitable to sustain the defense of laches.

It is urged that there can be no rescission because plaintiffs neither restored nor offered to restore what they had received.    They have received nothing but the paper writing, the said executory agreement. They did not get a formal assignment of mortgage duly acknowledged, which, recorded, would afford the best evidence of their interest in the mortgage.    *Pease* v. *Warren*, 29 Mich. 9 (18 Am. Rep. 58).

The agreement here is wholly executory on the part of the said defendants.    A rule applicable in this

case is stated in *Roberts* v. *James,* 83 N. J. Law, 492 (85 Atl. 244, Ann. Cas. 1914B, 859):

"The rule (of placing *in statu quo*) requires only the return of what has been received. It is applicable only to a contract that has been partly executed, and not to a contract that still remains wholly executory on the part of the alleged fraud-doer. In such a case the party who undertakes to rescind has received no advantage; he has nothing to return, and all he can do is to deny his obligation under the contract. If he does so in a reasonable time he has rescinded the contract."

We quote from 13 C. J. p. 622:

"The rule that one who seeks to rescind a contract for fraud must restore his adversary to the position he was in at the time of the contract applies only to a contract partly executed, and not to one wholly executory."

See *Lackovic* v. *Campbell,* 225 Mich. 1; *Johnson* v. *Insurance Co.,* 39 Mich. 33.

The decree determines in effect, and it will be modified to do so specifically, that the said writing in plaintiffs' hands is void and the question of liability thereon is *res adjudicata.* The writing relates to a mere chattel interest, the mortgage. 27 C. J. p. 218; *Dougherty* v. *Randall,* 3 Mich. 581. The failure to restore it will work no prejudice to defendants.

Although plaintiffs, before filing bill for rescission, had attempted, by their own act, to rescind (*Laubengayer* v. *Rohde,* 167 Mich. 605), the bill stated a case in equity, for plaintiffs sought restoration of the lots which they had conveyed to defendants, in so far as they remained in defendants' hands or under their control, and the cancellation of the deed of such lots. And the proofs showed that at least one lot remained in defendants' hands. The court of equity might have granted restoration of that lot and the setting aside of the deed as to it and decreed compensation

in money for the remainder due the plaintiffs.    Instead the plaintiffs were given simply a money decree. Plaintiffs established right to equitable relief.    The court had jurisdiction of the cause.    It might enter decree.    Jurisdiction was not lost by entering a money decree.    *Koontz* v. *Bay Circuit Judge*, 224 Mich. 463; *Jefferson Park Land Co.* v. *Wayne Circuit Judge*, 234 Mich. 345.

No other question need be discussed.

So modified, the decree is affirmed.    Costs to plaintiffs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.