OLITKOWSKI *v.* ST. CASIMIR'S SAVINGS & LOAN ASSN.

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTS WITH SAVINGS AND LOAN ASSOCIATION—EVIDENCE.

Administratrix of a deceased person's estate who withdrew funds from a bank account and opened an account therewith in a savings and loan association and later added and withdrew funds from it must be held to have known that she was dealing with such an association inasmuch as she was given a passbook in which was printed the constitution and bylaws of the association, although all her dealings as to such account were through an attorney who advised her in probate court matters and as to opening the account and which attorney was also an officer and director of the association (3 Comp. Laws 1929, § 12134 *et seq.*).

2. SAME—PRESUMPTION AS TO KNOWLEDGE OF LAW—INVESTMENT OF ESTATE FUNDS—SAVINGS AND LOAN ASSOCIATIONS.

An administratrix, like other persons, is chargeable with knowledge of the law that money is accepted by a savings and loan association only as on account of an investment in the stock administered could not be lawfully so invested by her without express approval of probate court prior to enactment of statute expressly permitting that it be done (3 Comp. Laws 1929, §12134 *et seq.*; Act No. 177, § 1, Pub. Acts 1937, as amended by Act No. 76, Pub. Acts 1939, and Act No. 143, Pub. Acts 1941).

3. LIMITATION OF ACTIONS—PLEADING—SAVINGS AND LOAN ASSOCIATIONS—CONSTRUCTIVE FRAUD.

Delay of more than 10 years from time the last of the money, belonging to the estate for which plaintiff was administratrix,

An attorney impliedly represents that he possesses knowledge of law in undertaking employment, see 1 Restatement, Agency, § 10, comment c.

Agent must fully disclose dual agency to both parties, see 2 Restatement, Agency, § 392.

Remedies of principal by enforcing constructive trust and suit for accounting, see 2 Restatement, Agency, § 399 (d), (e).

Laches and statute of limitations as a defense, see Restatement, Restitution, § 148.

was left with defendant savings and loan association and over eight years after last entry of an item of accrued interest barred recovery for balance of account on theory that acceptance of such money by the association raised a trust *ex maleficio* or constructive fraud, where defendant pleaded the statute of limitations (3 Comp. Laws 1929, § 12134 *et seq.*; § 13976, as amended by Act No. 193, Pub. Acts 1937).

4. EQUITY—DELAY—CONSTRUCTIVE FRAUD.

In suit by administratrix to recover estate funds from a savings and loan association on theory that its acceptance of the funds from her as administratrix was a constructive fraud, plaintiff should not prevail after delay of 8 or 10 years for, if the association be solvent, she will be repaid in full, and if it be insolvent, plaintiff should not be preferred over other investors in the association, the real opposite parties in interest, and persons interested in estate are presumed to be protected adequately by her bond (3 Comp. Laws 1929, § 12134 *et seq.*; § 13976, as amended by Act No. 193, Pub. Acts 1937).

5. SAME—EQUITY COURTS ACCEPT STATUTE OF LIMITATIONS.

Courts of equity accept statute of limitations as fixing proper period of repose for rights in equity and apply it unless suit is peculiarly equitable in nature or compelling equities are shown.

6. SAME—LACHES—DELAY MUST BE EXCUSED.

Where one invokes aid of equity after apparently sleeping on his rights for time equaling statutory period of limitations, he must allege facts which excuse delay and show strong equities in his favor.

7. ATTORNEY AND CLIENT—SAVINGS AND LOAN ASSOCIATIONS—CONSTRUCTIVE FRAUD—CONTINGENT RECOVERY—DEFENSES.

Attorney who advised administratrix to withdraw estate funds from a bank account and open an account therewith in savings and loan association of which he was an officer and director, contrary to law, failed in the discharge of his professional duties and, in effect, perpetrated a constructive fraud upon the administratrix; hence decree granting relief against him on such theory but contingent upon existence of deficiency in recovery from savings and loan association was proper and defenses of laches and statute of limitations, even if well pleaded, would not be available to him (3 Comp. Laws 1929, § 12134 *et seq.*).

8. SAME—ESTATES OF DECEDENTS—ALLOWANCE OF FEE—APPEAL.

Attorney who performed services for estate of which plaintiff was administratrix was properly allowed $350 as fee there-

for where probate court had allowed same in approving plaintiff's final account and no appeal was taken therefrom.

BOYLES, J., dissenting in part.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 10, 1942. (Docket No. 61, Calendar No. 41,956.) Decided July 1, 1942. Rehearing denied September 8, 1942.

Bill by Sophia Olitkowski, administratrix of the estate of John Olitkowski, deceased, against St. Casimir's Savings & Loan Association, a Michigan corporation, and Frank J. Kolodziejski to have certain sums declared a trust and for other relief. Cross bill by defendant Kolodziejski against plaintiff for sums due for attorney fees. From decree rendered on bill and dismissing cross bill, defendants appeal. Reversed as to defendant association and affirmed as to defendant Kolodziejski, and remanded.

*John Stipeck* and *David E. Roberts* (*Dale D. Libkuman*, of counsel), for plaintiff.

*Louis Andrzejewski* (*John C. Bossenberger*, of counsel), for defendant association.

*Chas. A. Bryan*, for defendant Kolodziejski.

BOYLES, J. (*dissenting in part*). Plaintiff, as administratrix of the estate of her father, seeks to recover a sum of money admittedly received by the defendant, St. Casimir's Savings & Loan Association, either as a "deposit," or an "investment" in membership certificates. Defendant Frank J. Kolodziejski was employed by the administratrix as attorney for the estate, and also, at the time this money was turned over to the savings and loan as-

sociation, was attorney for, and a director of, the association.

Plaintiff's father, John Olitkowski, died intestate in 1929, leaving $2,196.64 on deposit in a Detroit bank, and about $1,500 in promissory notes receivable. The bank deposit could not be withdrawn without probating his estate and plaintiff employed defendant Frank J. Kolodziejski. A petition was filed in probate court and plaintiff was appointed and qualified as administratrix. Defendant Kolodziejski instructed or advised plaintiff to withdraw the bank deposit and deposit it with the defendant association. This was done, through Kolodziejski; defendant association opened an account on its books under the name "Olitkowski Estate" and issued a passbook to plaintiff, containing the constitution and bylaws of the association. No certificates of membership were ever issued to plaintiff. Subsequent to the original "deposit," Kolodziejski, acting as attorney for the estate, collected further sums for the estate, all of which were credited to plaintiff on the passbook, together with several interest items. The passbook shows several items of sums withdrawn, and a balance of $2,295.30 due plaintiff on January 1, 1932. Plaintiff has received nothing since that date. The circuit judge gave plaintiff a decree against the defendants for that amount, together with interest at five per cent. per annum from that date. Defendants prosecute separate appeals.

The association admits its liability to the estate in some amount, but contends that the estate has no greater right than other shareholders. The association has been in process of voluntary liquidation since 1932 and apparently its assets are not sufficient to pay shareholders in full. As against the association's claim, plaintiff insists that Kolodziejski and the association received the money illegally

as a deposit, knowing that the administratrix could not legally deposit the estate's money or legally "invest" it in the association's membership certificates, and that a constructive trust results in favor of the estate.

Plaintiff never had any direct contact with anyone representing the association except Kolodziejski. His office was in the rear of the offices occupied by the association through which one would have to pass in order to reach his private office. Plaintiff's "deposits" and withdrawals were all made through Kolodziejski. He never directed plaintiff to any other agent, officer or representative of the association, but handled all the transactions himself. He advised her to make the deposit in the first instance, as her attorney, and continued to act as such throughout the transactions.

In his brief and on the record, Kolodziejski invariably refers to the fund as a "deposit" in the association. Obviously, Kolodziejski, a well-informed attorney, must have known that the association could not accept a "deposit" of money. On the other hand, Kolodziejski must be charged with knowledge that the administratrix could not "invest" estate moneys in membership certificates, at least without express approval by the probate court (and none was obtained).

The estate was ready for distribution to the heirs in 1931, having been converted into money and all debts paid. Plaintiff contacted Kolodziejski to obtain the money for distribution and was told she would have to wait—that the association was obtaining a loan. In March, 1932, plaintiff filed her final account in probate court, showing a balance on hand, $2,326.18. The record does not show whether the probate court entered any order allowing the account, although the circuit judge stated in his opinion it was allowed. Kolodziejski suggested

she accept four passbooks of the association dividing the balance between the four heirs. This, the plaintiff declined to do. Thereafter, plaintiff continued to try to get the money to close the estate. Kolodziejski proposed that plaintiff accept as security assignments of mortgages he had with the association. Finally, when plaintiff was cited by the probate court to close the estate, she employed other counsel and started two different suits against Kolodziejski for summary judgment against him as attorney, which were dismissed on the ground that the matter should not be disposed of as a summary proceeding.

We assume that the defendant association was organized under Act No. 50, Pub. Acts 1887, as amended (3 Comp. Laws 1929, § 12134 *et seq.* [Comp. Laws Supp. 1940, § 12134 *et seq.*, Stat. Ann. § 23.541 *et seq.*]). This act expressly prohibits the association from accepting "deposits," directly or indirectly, and forbids engaging in the business of banking in any way. 3 Comp. Laws 1929, § 12170 (Stat. Ann. § 23.580).

Kolodziejski acted for the savings and loan association in its contact with plaintiff throughout this entire transaction. The savings and loan association is bound by his knowledge that it had no right to receive deposits, and that the administratrix had no right to invest estate money in its membership certificates. The record amply justifies the conclusion that the association must be held bound by the acts of Kolodziejski. *Katz* v. *Kowalsky,* 296 Mich. 164 (134 A. L. R. 179).

Constructive fraud, a term applied to a great variety of transactions which equity regards as wrongful and to which it attaches the same or similar effects as those that follow actual fraud, has been evolved to designate what is essentially nothing more than the receipt and retention of unmerited

benefits.  Constructive trusts arise by operation of
law to prevent injustice; fraud, active or construc-
tive, is their essential element, and they will arise
whenever it becomes necessary to prevent a failure
of justice.  Equity will construct a trust where a
person gains something he should not be permitted
to hold in equity and good conscience through ac-
tual fraud, abuse of confidence, or questionable
means.  A constructive trust arises not from agree-
ment but from operation of equities in order to
satisfy demands of justice.  A court of equity, in
decreeing a constructive trust, is bound by no un-
yielding formula as the equity of the transaction
must shape the measure of relief.  A constructive
trust is imposed not because of the intention of the
parties but because the person holding the title to
the property would profit by a wrong or would be
unjustly enriched if he were permitted to keep the
property.  Constructive trusts are such as are
raised by equity in respect of property which has
been acquired by fraud, or where, though acquired
without fraud, it is against equity that it should be
retained by him who holds it.  *Union Guardian
Trust Co.* v. *Emery,* 292 Mich. 394.

Throughout the entire transaction, plaintiff was
led to understand by Kolodziejski that he was in
effect the association and the matter was entirely
intrusted to him by plaintiff, who was not versed in
such matters.  An attorney of much experience must
be presumed to understand and be familiar with
well-established principles of law.  2 Mechem on
Agency (2d Ed.), p. 1778, § 2195.  When an attorney
undertakes the management of business committed
to his charge, he thereby impliedly represents that
he possesses such knowledge.  2 Mechem on Agency
(2d Ed.), p. 1775, § 2193; 1 Thornton on Attorneys
at Law, p. 553, § 314.  Where an agent is invested
with authority or discretion, it is against public

policy for him to represent the other party in the transaction without full disclosure to both of his dual agency. *Trost* v. *J. E. St. Clair Co.*, 250 Mich. 342. An attorney owes an undivided allegiance to his client and he cannot act both for his client and one whose interest is adverse or conflicting with that of his client in the same general matter unless the client consents after he has been given full knowledge of all the facts and circumstances. 5 Am. Jur. p. 296. We must hold Kolodziejski liable to the estate for any loss resulting from his conduct.

The association insists that plaintiff's claim is barred by the statute of limitations,* or by equitable estoppel. Passing the question whether this defense is properly raised by the pleadings, or on this appeal, mere lapse of time, without showing prejudice, will not constitute laches.

Plaintiff administratrix has been diligent in her efforts to obtain the return of the money for the estate. In 1931, Kolodziejski told her she would have to wait for the money—that the association was obtaining a loan of $20,000; in 1932, when she signed the annual account to probate court, he tried to induce her to accept four passbooks in order to close the estate, and she refused; Kolodziejski then proposed she accept one of his mortgages to the association, which he would then pay her in instalments; she consulted her priest, who advised against it; she consulted with Judge Palmer, who referred her back to Kolodziejski; she succeeded in getting $500 in 1931 to pay off one of the heirs who was in urgent need of the money; she *was glad to get something out of it;* she continued her efforts, and in 1934 or 1935 could not get to see Kolodziejski because he was then an assistant attorney general in

---

* See 3 Comp. Laws 1929, § 13976, as amended by Act No: 193, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 13976, Stat. Ann. 1940 Cum. Supp. § 27.605).—Reporter.

Lansing, and not in his office. She retained another attorney, who wrote letters to the defendant association without avail, started two different suits against Kolodziejski for summary judgment which were dismissed under a local court rule holding the cause should be tried on its merits. The instant suit was started in 1940, defendants moved to dismiss on the ground plaintiff was guilty of laches, which motions were dismissed by the circuit judge *with prejudice.* No appeal was taken from that order. The delay in starting the instant suit was caused by defendants, not due to lack of diligence by plaintiff administratrix, and she is not guilty of laches. Defendants were not prejudiced by the delay.

"A fundamental requisite of estoppel is that conduct, whether action or inaction, on the part of the one against whom the estoppel is asserted has worked to the disadvantage of the party who urges this defense. *Cudahy Brothers Co.* v. *West Michigan Dock & Market Corp.,* 285 Mich. 18." *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62.

Defendants seek to apply the doctrine of equitable estoppel against plaintiff's claim. Unless plaintiff's conduct is shown to have prejudiced defendants' rights, there can be no estoppel.

"This instruction was correct. There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done relying upon conduct calculated to mislead. *Gorham* v. *Arnold,* 22 Mich. 247; *Palmer* v. *Williams,* 24 Mich. 328; *Crane* v. *Reeder,* 25 Mich. 303; *DeMill* v. *Moffat,* 49 Mich. 125." *Thirlby* v. *Rainbow,* 93 Mich. 164.

Laches is an affirmative defense. Mere lapse of time, without a showing of prejudice, will not constitute laches. *Chamski* v. *Wayne County Board of Auditors,* 288 Mich. 238.

See, also, *Cudahy Brothers Co.* v. *West Michigan Dock & Market Corp.*, 285 Mich. 18.

"But it is urged that plaintiff has been guilty of laches. There was a lapse of several years between the furnishing of the money and the commencement of this suit. Lapse of time alone is not generally sufficient to sustain the defense of laches. *Walker* v. *Schultz,* 175 Mich. 280. The evidence of lapse of time should be considered with other facts and circumstances of the case in determining the question. Laches will not be permitted to defeat subrogation where it would be inequitable to deny it. *Heth* v. *Oxendale,* 238 Mich. 236. The record is convincing that plaintiff furnished the money in the circumstances testified to by her. It is equitable that she be paid." *Smith* v. *Sprague,* 244 Mich. 577.

In *Walker* v. *Schultz,* 175 Mich. 280, this court quoted with approval the following rule fro] *Sanborn* v. *Eads,* 38 Minn. 211 (36 N. W. 338):

"The mere lapse of time does not constitute laches, unless the circumstances were such as to make the delay blamable. Whether the delay has been culpable or not may obviously depend upon many facts and considerations, such as the length of time (which cannot be fixed by any definite rule, this being a subject of discretion under the circumstances of each case), the knowledge of the facts, actual or imputable, the consequences as respects others than the plaintiffs, and perhaps other things."

See, also, *Backus* v. *Backus,* 207 Mich. 690.

Plaintiff administratrix still had expectation of being able to recover the estate's money when she started the suits in 1938 against Kolodziejski. She then considered him liable for the money, and obviously still entertains the same idea. Had she promptly repudiated the "deposit" or so-called "investment," no serious claim of estoppel could

be made. During the entire time, at least until 1938, she was led to delay in asserting her rights by Kolodziejski, her attorney, who likewise was acting for the savings and loan association. A similar situation arose in *Wyckoff* v. *Victor Sewing Machine Co.*, 43 Mich. 309, where this court said:

"We do not think the laches in this case are conclusive against complainant's equities."

During this lapse of time, and at least until 1938, defendants did not deny plaintiff's right to the money.

"Laches is hardly imputable where plaintiff's claim has been under consideration for adjustment most of the time before suit." *Seymour* v. *Detroit Copper & Brass Rolling Mills* (syllabus), 56 Mich. 117.

Kolodziejski occupied the status of a confidential relationship with plaintiff. Neither he nor the loan association can seriously claim that plaintiff did anything to take advantage of them. On the other hand, defendants did not frankly reveal to plaintiff the true situation, as now claimed by them—that she merely invested the estate's money in certificates of membership. The only evidence of the "deposit" of money given to plaintiff was a "passbook," similar to the usual savings account books of banks, showing "deposited," "interest," "withdrawn," "balance." It also contained the constitution and bylaws, which referred (in part) to "depositing members" and "withdrawals" under paragraphs so designated. No certificates of membership or for "advance payments of instalment dues" were ever issued to plaintiff. Equity does not countenance such concealment of the situation or allow defendants to take advantage of it. *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N.

S.] 1036). The fact that Kolodziejski was the attorney for the estate, and led his client into the delay in starting court action, should, in equity, bar defendants from successfully advancing their own dereliction as a defense. *Wright* v. *Wright,* 37 Mich. 55. In large measure, whether equity should withhold relief on the ground of laches must depend on the facts and circumstances of the particular case. That the savings and loan association had no knowledge of the fraudulent conduct of Kolodziejski is no defense. As said by Mr. Justice NORTH in *Upell* v. *Bergman,* 246 Mich. 82:

"If Brillinger perpetrated a fraud on the plaintiffs in the manner alleged in their bill of complaint, the Bergmans, as principals, must be held responsible for the act of their agent even though they were not aware of his fraudulent conduct. They cannot profit by his fraud. *Chaffee* v. *Raymond,* 241 Mich. 395. * * *

"The defendants contend the plaintiffs should not be granted equitable relief because of laches. In a large measure the question as to whether relief should be withheld on the ground of laches must depend upon the facts and circumstances of the particular case. It has often been held that mere lapse of time does not necessarily constitute laches; and that the right to urge laches as a defense is dependent upon some prejudice having resulted therefrom. In the instant case the plaintiffs were not only deceived and defrauded in the first instance, but because of their misplaced confidence in Brillinger, they were slow to comprehend the wrong done."

Mr. Justice NELSON SHARPE, writing for the court, in *Bayley* v. *Friedberg,* 226 Mich. 125, again declared the law of this State, which has been repeatedly settled by the decisions hereinbefore cited, as follows:

"Defendants claim that plaintiff was guilty of such laches as should preclude the granting of re-

lief to him. This court has many times held that one seeking relief for fraud must act promptly after its discovery. *Draft* v. *Hesselsweet,* 194 Mich. 604; *Bowen* v. *Stocklin,* 215 Mich. 341. The mere lapse of time, however, is not sufficient to constitute laches. *Backus* v. *Backus,* 207 Mich. 690; *Walker* v. *Schultz,* 175 Mich. 280; *Humiston, Keeling & Co.* v. *Yore,* 181 Mich. 629. The delay in moving may always be explained, and, if satisfactorily accounted for, relief will be granted, notwithstanding the lapse of time. *Mulheron* v. *Henry S. Koppin Co.,* 221 Mich. 187."

The record before us is not clear as to the time when plaintiff administratrix first discovered that defendants were claiming that the "deposit" was an investment in certificates of membership, wherefore plaintiff's estate would have to take potluck with all the other holders of membership certificates. It is fair to conclude that this obvious change of position from Kolodziejski's previous representations was not disclosed to plaintiff until she employed other counsel in 1938. Certainly thereafter plaintiff has been diligent in prosecuting litigation to recover the money. If plaintiff's discovery of the constructive fraud was not until 1938, neither the statute of limitations nor the doctrine of laches or equitable estoppel can be successfully urged against her claim.

"We think the trial judge was correct in holding that plaintiffs' right to equitable relief was not barred by the statute of limitations. These defendants are not in a position to charge plaintiffs with lack of diligence in discovering that their vendors' agent had misrepresented to plaintiffs the location of the lot lines. We have often held that a defrauded party is not obligated to the person chargeable to exercise diligence in discovering a fraud. *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A.

[N. S.] 1092, 125 Am. St. Rep. 406); *Lewis* v. *Jacobs*, 153 Mich. 664. Plaintiffs rely upon the statute (3 Comp. Laws 1929, § 13983 [Stat. Ann. § 27.612]) which authorizes suit within two years after discovery of a concealed fraud, although otherwise barred by the statute of limitations. Defendants contend that this statutory provision applies to actual or active fraud only, not to constructive fraud. If the injured party's remedy is essentially an equitable one, we think it is immaterial whether it is based on active or constructive fraud.

\* \* \*

" 'Courts of equity not only act in obedience and in analogy to the statutes of limitations in proper cases, but they also interfere in many cases to prevent the bar of the statutes where it would be inequitable or unjust. Thus for example if a party has perpetrated a fraud which has not been discovered until the statutable bar may apply to it at law, courts of equity will interpose and remove the bar out of the way of the other injured party. \* \* \*

" 'The question often arises, in cases of fraud and mistake \* \* \* under what circumstances, and at what time, the bar of the statute of limitations begins to run. In general it may be said that the rule of courts of equity is, that the cause of action or suit arises when and as soon as the party has a right to apply to a court of equity for relief. In cases of fraud or mistake it will begin to run from the time of the discovery of such fraud or mistake, and not before.' 3 Story's Equity Jurisprudence (14th Ed.), §§ 1974, 1975." *Hathaway* v. *Hudson*, 256 Mich. 694.

However, defendants insist that the statute of limitations bars plaintiff from recovery. While this court has repeatedly held that statutes of limitations will be held to apply by analogy in equity cases (*Hatch* v. *Common Council of the Village of St. Joseph*, 68 Mich. 220; *People, ex rel. Attorney*

*General,* v. *Railroad Co.,* 145 Mich. 140; *McRae* v. *Auditor General,* 146 Mich. 594 (10 Ann. Cas. 594); *Young* v. *Young,* 200 Mich. 236), this is not a hard and fast rule.

"Defendants' counsel insisted in the court below and do here that the laches of plaintiffs precludes recovery here. It is a general rule that a court of equity will apply the statute of limitations by analogy. But this is not a hard and fast rule. The court of equity frequently overlooks delays." *Brown* v. *Harrison,* 242 Mich. 603.

"In suits for specific performance, while courts of equity have regard to statutes of limitation, and by analogy are inclined, as a general rule, to conform therewith when considering and applying the doctrine of laches, they are by no means absolutely conclusive and are often disregarded. Laches may be declared to be a bar long before the statute has run, or, where equitable reasons for delay have been shown, relief may be granted at a time beyond the statutory period." *Rodgers* v. *Beckel,* 172 Mich. 544, 550.

The above was quoted with approval by Mr. Justice McDONALD in *Gatz* v. *Bain,* 244 Mich. 536, 541, 542, to which was added the following conclusion:

"The plaintiffs' remedy is not barred by laches. Laches is an equitable defense. Lapse of time alone does not create it. There must be other circumstances that make it inequitable to grant the relief prayed for. Such a circumstance would be a change in conditions to the detriment or disadvantage of the party against whom the relief is sought. *Walker* v. *Schultz,* 175 Mich. 280.

" 'But delay alone, unaccompanied by other circumstances, will not necessarily preclude relief. In every case where the defense is founded on mere delay, that delay, of course, not amounting to a bar

of any statute of limitations, the validity of that defense must be tested upon principles substantially equitable. Two circumstances, always important in such cases, are the length of the delay and the nature of the acts done during the interval, which might affect either party or cause a balance of justice or injustice in taking one course or the other. The doctrine of laches, as understood in courts of equity, implies injury to the party pleading it as a defense. Where the situation of the parties has not been altered, and one has not been put in a worse condition by the delay of the other, the defense of laches does not generally apply.' *Parker* v. *Bethel Hotel Co.*, 96 Tenn. 252, 286 (34 S. W. 209, 31 L. R. A. 706, 714).''

In that case, the court divided equally on the effect of 23 years' delay in starting suit for specific performance.

In the case at bar, Kolodziejski makes no claim of a change of condition resulting in disadvantage to him, and the loan association itself was in process of liquidation during the entire period, beginning with 1931 or 1932. Some comment has been made that the plaintiff administratrix should share alike with other certificate-holders in the association. Were the question before us that there were other ''depositors'' in the association who had been misled or defrauded as plaintiff has been, we would be impelled to give equal consideration to their claims. However, no such claim is disclosed in the record before us.

Decisions of this court might 'be cited almost *ad infinitum* where the concurrent questions of laches, statutes of limitations and equitable estoppel have been referred to and discussed. As applied in equity, the decision obviously depends on a consideration of the equities between the parties to the

suit.  Perhaps the rule was best stated by Mr. Justice FEAD in *Angeloff* v. *Smith,* 254 Mich. 99:

"The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right.  *Epstean* v. *Mintz,* 226 Mich. 660."

"A defrauded party who seeks to rescind must act with reasonable promptness after discovering the facts.  What is a reasonable time depends on the circumstances of the particular case.  *Cornell* v. *Crane,* 113 Mich. 460.  This defense will not be permitted to defeat the right to rescind unless it would be inequitable to deny it.

"And it was said in *Parks* v. *Brooks,* 188 Mich. 645:

" 'Laches does not necessarily grow out of a mere lapse of time.  *  *  *  Laches rests chiefly on the inequity of permitting a claim to be enforced by reason of changed conditions or relations of the property or parties resulting from delay.' "  *Gyles* v. *Stadel,* 252 Mich. 349.

"One occupying a position of trust and confidence may not place himself in a situation in which his interest may conflict with his duty.

"As the defense of laches rests primarily on the theory that it would be unjust to permit a claim to be enforced by reason of changed conditions or altered situation of the parties resulting from delay, mere lapse of time unaccompanied by any elements of estoppel will not deprive a complaining beneficiary of his remedy against his trustee."  *Parks* v. *Brooks* (syllabi), 188 Mich. 645.

See, also, *Heth* v. *Oxendale,* 238 Mich. 236; *Sanders* v. *Campbell,* 231 Mich. 592; *Schliska* v. *Ross,* 230 Mich. 225; *Howe* v. *Patrons' Mutual Fire Ins. Co. of Michigan,* 216 Mich. 560; *Kaiser* v. *Kaiser,*

213 Mich. 660; *Nickerson* v. *Nickerson,* 209 Mich.
134; *Humiston, Keeling & Co.* v. *Yore,* 181 Mich.
629; *Parkinson* v. *Parkinson,* 177 Mich. 336; *Quinn*
v. *Tully,* 174 Mich. 30.

We should emphasize that the defendants in this
case are not claiming prejudice to equal rights of
their own, as against plaintiff's claim of a construc-
tive fraud. The defendants here are Kolodziejski
and the loan association. No other party has ap-
peared or sought to intervene on the ground that
he or she was also led to make "deposits" of money.
As between the parties in this case, plaintiff is not
barred in equity by defendants' claim of the stat-
ute of limitations, laches, or equitable estoppel.

Defendant Kolodziejski claims he should be al-
lowed his fees as attorney for the estate. There is
merit in the claim. His cross bill for affirmative re-
lief on that ground was dismissed by the trial court.
Counsel for all the parties stipulated in the court
below that Kolodziejski was entitled to a reason-
able fee for services rendered in said estate.
Plaintiff, in filing her final account as administra-
trix, took credit for a disbursement of $350 to Ko-
lodziejski for attorney fees. Assuming that the pro-
bate court entered an order approving the account,
the circuit judge was correct in holding that this
question was closed, and that he had no jurisdiction
over the amount. Kolodziejski has not been paid
and should be allowed a credit for his attorney fees
as against any final liability to the estate, the
amount, if not already fixed, to be determined by
the trial court.

The court below decreed that the remaining as-
sets of the association were impressed with a trust
in favor of the estate, directed that the assets be
sequestered and that, if necessary, a receiver be

appointed to liquidate the same. With this, we are in accord. Title to the trusteed fund did not pass to the association for its own use, and the estate is not a common creditor of the association. The decree further provided that if the amount received from the sequestered assets be insufficient to pay the estate in full, Kolodziejski should be liable for the deficiency. The court retained further jurisdiction for the purpose of determining this deficiency, if any. We find no fault with the decree in that regard.

The case should be remanded for amendment of the decree as to attorney fees, and otherwise should be affirmed, with costs to appellee.

NORTH, J. For reasons hereinafter noted I am not in full accord with the opinion and conclusions reached by Mr. Justice BOYLES, particularly that portion wherein plaintiff is granted relief against the defendant savings and loan association.

Prior to June 10, 1929, plaintiff had been appointed administratrix of the estate of her deceased father, John Olitkowski. On the date noted she withdrew funds of the estate from the Michigan State Bank of Detroit in the amount of $2,196.64 and opened an account in that amount as an investor in or member of the defendant savings and loan association. Subsequently and on or before October 10, 1930, she made a like disposition of other funds of the estate to the amount of $1,140. From time to time after the inception of this account and on or before January 1, 1932, interest items were added; and there were also withdrawals from time to time. The withdrawals totalled $1,358.50, being 8 in number, the first on June 14, 1929, in the amount of $517, and the last on Octo-

ber 31, 1931, in the amount of $100. The undisputed evidence is that on January 1, 1932, plaintiff had to her credit in this account $2,295.30.

Plaintiff seeks to recover on the theory that defendant Frank J. Kolodziejski, an attorney, at the time undertook to represent both the plaintiff and the defendant savings and loan association, and advised plaintiff to use the defendant association as the depository of the estate's funds, without revealing to her that such disposition of the funds of the estate was an attempt to invest the same in the stock of the association or advising her that such an attempted use of the estate's funds was unlawful. And as to the defendant savings and loan association, plaintiff's theory is that as a result of the attempted unlawful use of the estate's funds a trust *ex maleficio* arose and the association, as well as the attorney, should be held guilty of a constructive fraud and a holder of the funds in trust.

In its answer the association pleaded both laches and the statute of limitations.[*] From the very outset of this account with defendant association, June 10, 1929, plaintiff had reason to know and must be held to have known that she was dealing with a savings and loan association.[†] At that time she was given passbook No. 964 in which was printed the constitution and bylaws of the defendant savings and loan association. Plaintiff, like every other intelligent citizen, was chargeable with knowledge of the law that money is accepted by such associations only as on account of an investment in the stock of the association; and likewise she was chargeable with knowledge of the law that at the time she was carry-

---

[*] See 3 Comp. Laws 1929, § 13976, as last amended by Act No. 193, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 13976, Stat. Ann. 1940 Cum. Supp. § 27.605).—REPORTER.

[†] See 3 Comp. Laws 1929, § 12134 *et seq.* (Stat. Ann. § 23.541 *et seq.*).—REPORTER.

ing on this account the funds of an estate could not be lawfully so invested. While it cannot affect the outcome of the instant case, in passing it may be noted that this phase of the law in Michigan has been changed by statutory enactment. See Act No. 177, § 1, Pub. Acts 1937, as amended by Act No. 76, Pub. Acts 1939, and Act No. 143, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 12993–11, Stat. Ann. 1941 Cum. Supp. § 26.85). From plaintiff's own testimony it appears that she at least had some knowledge of the nature of her transaction with the defendant savings and loan association. We quote the following: .

"*Q.* When you deposited the money in the association did you know anything about it?

"*A.* Well I knew it was a savings.

"*Q.* Savings and loan association?

"*A.* Yes, sir.   *   *   *

"*Q.* Did you hear anything bad about the association?

"*A.* Well, *lately* there is a lot —   *   *   *

"*Q.* So you had this money since June 10, 1929, and you knew that you had received shares or interest as it is called?

"*A.* Yes."

After January 1, 1932, at which time plaintiff's passbook showed $2,295.30 to her credit, there were no transactions between plaintiff and the defendant association which changed the relation between the two or bore upon her rights of recovery except her possible effort to secure return of the funds to her by demands or requests made to defendant Kolodziejski. And it should be noted the undisputed record is that Kolodziejski wholly terminated his relations with the defendant savings and loan association in 1931. But plaintiff did not institute this suit until January 19, 1940. This was more than 10 years after the last of the estate's money was left with

the defendant association and over 8 years after the last entry of the item of accrued interest on plaintiff's account with the association. Regardless of whether plaintiff's cause of action is viewed as one involving a trust *ex maleficio* or one arising from constructive fraud, it is clearly barred by the statute of limitations pleaded in the answer of the savings and loan association.

I am mindful of the cases, some of which are cited in my brother's opinion, wherein courts of equity have disregarded the bar of the statute of limitations when it would have been violative of the clear equities of the case to have done otherwise. But I cannot view this record as being one of that character. There is credible testimony in the instant case that in 1929 and 1930 the condition of the assets of the defendant association was good. Furthermore, the court should not be blinded to the fact that the real opposite parties in interest in this case are other investors in the stock of the defendant association. It is not clear from the record whether the association is now solvent or insolvent; but plaintiff alleges its affairs were placed in charge of a custodian. In case the association is solvent, plaintiff, even though her bill of complaint herein is dismissed, will be repaid in full, because the association admits its liability to her as a shareholder. On the other hand, if the association is insolvent, plaintiff by prevailing in the present suit would establish herself as a preferred creditor, but at the expense and to the disadvantage of all other shareholders in the association. It is to be presumed that persons interested in the Olitkowski estate are adequately protected by the bond of the administratrix. Under such circumstances a court of equity would not be justified in permitting plaintiff to recover notwithstanding her inexcusable delay in asserting her claim beyond the bar of the statute

of limitations. In this connection it may be noted as bearing upon the disadvantage other shareholders in the association will face, if plaintiff's claim is preferred, such disadvantage is disclosed by the trial court's decree which adds $1,117.70 as interest accrued on plaintiff's claim during the period of her inactivity. This is an increase of nearly 50 per cent. over the original amount of the claim, and much more than would have accrued to plaintiff if she had left the funds in the bank where she had her original deposit.

Abundant authority is cited in support of the context of two headnotes which we quote from *Moross* v. *Oakman,* 257 Mich. 464:

"Courts of equity accept statute of limitations as fixing proper period of repose for rights in equity and apply it unless suit is peculiarly equitable in nature or compelling equities are shown.

"Where one invokes aid of equity after apparently sleeping on his rights for time equaling statutory period of limitations, he must allege facts which excuse delay and show strong equities in his favor."

For the reasons above noted plaintiff's bill of complaint should be dismissed as against defendant savings and loan association, with costs of both courts.

There are abundant reasons why a different result should be reached as to defendant Frank J. Kolodziejski. There is no question but that at the inception of the transactions which have culminated in this lawsuit and subsequent thereto he sought to act and did act as the legal adviser of both plaintiff and defendant savings and loan association. It was largely, if not wholly, through his advice and direction that plaintiff administratrix used the funds of the estate in the manner hereinbefore indicated. Instead of advising or directing plaintiff

to invest the funds of the estate in the stock of the association, defendant Kolodziejski was in duty bound to advise his client that such use of the estate's funds was then contrary to law. This he failed to do; and we think the record justifies the conclusion that his conduct in this particular was prompted by his interest in the defendant association rather than otherwise. And in this aspect the interests and rights of plaintiff clearly conflicted with the interests of the association. In advising plaintiff as his client Kolodziejski not only failed in the proper discharge of his professional duties but in effect he perpetrated at least a constructive fraud upon plaintiff. While the answer of Kolodziejski rather indefinitely charges that plaintiff did not co-operate with him in closing the Olitkowski estate, we do not find that he has sufficiently pleaded the defense of laches, and he has not pleaded the statute of limitations at all. And further, even though such defenses were adequately pleaded, we think as between plaintiff and defendant Kolodziejski the equities of the case are decidedly in her favor, and such defenses if pleaded could not prevail in the instant case in behalf of Kolodziejski. For that reason the decree of the circuit court as affirmed in my brother's opinion, and wherein plaintiff is granted contingent relief against defendant Kolodziejski, should be affirmed.

I am also in accord with my brother's opinion as to defendant Kolodziejski being entitled to an attorney's fee of $350, but in this particular decision should be planted solely on the ground that the probate court so ordered and no appeal has been taken therefrom. Plaintiff will recover costs of both courts against defendant Kolodziejski.

CHANDLER, C. J., and STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with NORTH, J. WIEST, J., took no part in this decision.